**UNITED STATES of America, Plaintiff,**

v.

**John Thaddeus RIZZO, Gary Eugene Shubert, Eugene Vincent White, Defendants.**

No. 79–00122–01/03–CR–W–5.

United States District Court, W. D. Missouri, W. D.

Feb. 11, 1980.

Edward D. Holmes, Strike Force Atty., Kansas City, Mo., for plaintiff.

Charles A. Gallipeau, Kansas City, Mo., for defendant Rizzo.

Robert G. Duncan, Kansas City, Mo., for defendant Shubert.

Gary L. Argo, Kansas City, Mo., for defendant White.

## MEMORANDUM AND ORDER

### SCOTT O. WRIGHT, District Judge.

Gary Eugene Shubert, along with two other persons, has been charged by the grand jury with fourteen counts of mail fraud in violation of 18 U.S.C. § 1341. Prior to his indictment, Shubert was served with a grand jury subpoena commanding him to appear at the Kansas City office of the Federal Bureau of Investigation and furnish the FBI with handwriting exemplars and fingerprints. On December 8, 1978, Shubert appeared at the FBI office as requested and, while there, allegedly made certain statements which he now seeks to have suppressed. Shubert claims that any statements made by him were obtained in violation of his constitutional rights as enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.2d 2d 694 (1966).

At a hearing held in connection with defendant's motion to suppress, FBI Agent Thomas Gray testified that he served Shubert with a federal grand jury subpoena on October 24, 1978. In response to this subpoena, Shubert appeared at the FBI's offices on December 8, 1978, where he was fingerprinted and provided the FBI with seventeen pages of handwriting exemplars. Gray testified that during this entire proceeding Shubert was accompanied by Phil Thompson, an investigator for Shubert's attorney. Also present at this proceeding was George Fellows, another Special Agent of the FBI.

Gray testified that when Shubert and Thompson arrived at his office he advised them of his identity and that of Agent Fellows. He also stated that he told them that Shubert was being asked to furnish the handwriting samples and fingerprints in connection with an investigation of possible violations of federal law relating to grain shipments made to the Cargill Grain Company in Kansas City, Missouri. Gray further testified that pursuant to customary FBI procedures, he read aloud to Shubert a form entitled "Interrogation; Advice of Rights." Agent Gray stated that Shubert said he understood his rights, but he declined to sign the advice of rights form. According to Gray, all of this took place soon after Shubert arrived at the FBI office and before any other events transpired.

Gray testified that as the fingerprinting and handwriting session was ending, he asked Shubert three or four questions. He first asked Shubert if he knew any one by the name of Ted Garness. Gray stated that Shubert responded to this question by stating "No." Gray next asked Shubert if he had ever met anyone named Ted Garness. Gray stated that he did not recall Shubert's exact answer, but in substance Shubert replied in the negative. Gray testified that he then asked Shubert if he was aware of any information which would indicate that a person named Ted Garness actually existed. Again Gray testified that he did not recall Shubert's exact answer, but that he did remember that Shubert had responded negatively to this question.

After these questions had been answered by Shubert, Shubert told Gray that he did not wish to answer any additional questions. Gray testified that shortly thereafter, Shubert and Thompson left the FBI office. Gray said that he was quite sure of the sequence in which these events took place, *i. e.*, that the *Miranda* warnings preceded any questioning, because he prepared an interview log of this activity. Gray's handwritten interview log was received in evidence (Government's Exhibit No. 1), and it generally parallels Gray's testimony.

The advice of rights form which Gray read to Shubert was also introduced in evidence (Government's Exhibit No. 2), and it bears a handwritten notation made by Gray. The notation is to the effect that the form was read aloud to Shubert, who said he understood it but declined to sign it. This document was dated and signed by Gray and Special Agent Fellows and indicates that the form was read to the defendant at 9:39 a. m. on December 8, 1978.

Agent Fellows also testified for the Government at the suppression hearing. He stated that he was present when Shubert and Thompson arrived at the FBI office and that he remembered Gray reading the advice of rights form to Shubert shortly after he arrived. Fellows testified that although he knew that Gray asked Shubert some questions toward the end of the interview, he could not recall either the specific questions or answers. To the best of his recollection, however, he believes that Shubert answered Gray's questions in the negative.

Defendant Shubert also testified at the suppression hearing. He stated that prior to going to the FBI office, Robert Duncan, his attorney, instructed him not to answer any questions asked by the FBI. Furthermore, Shubert said that he had been informed that the FBI would not attempt to question him. However, as the fingerprinting and handwriting session was drawing to a close, Shubert stated that Agent Gray asked him if he knew anyone named Ted Garness. Although Shubert admitted that he answered no to this question, he claimed that he actually intended to say "stop." He testified that he knew he was not supposed to answer any questions, and that when Gray asked this question he was surprised. Shubert stated that in his surprise he said no, but what he really meant was: "Stop, don't ask any questions." Thus, after responding to Gray's first question, Shubert stated he refused to answer any additional questions and left the FBI office a few minutes later.

■ From the facts adduced at the suppression hearing, the Court believes it is clear that the defendant's constitutional rights were not violated by the FBI's questioning on December 8, 1978. The investigating agent promptly advised Shubert of his rights upon his arrival at his office. Moreover, not only did the FBI inform him of his rights, but, by his own admission, his attorney had instructed him to refrain from answering questions while at the FBI office. Consequently, the defendant was well aware of his right to remain silent long before Agent Gray asked him any potentially incriminating statements.

■ Beyond the foregoing, the Court finds an even more compelling reason for holding that Shubert's constitutional rights were not infringed. The United States Supreme Court has indicated, in a decision rendered subsequent to *Miranda*, that the advice of rights procedure outlined in *Miranda* is applicable only to a custodial interrogation. A criminal suspect need not be given the *Miranda* warnings prior to police questioning unless the suspect is in "custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977), quoting from *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

In *Oregon v. Mathiason, supra*, the defendant was suspected by the police of having committed a residential burglary. The officer investigating the crime made several unsuccessful attempts to locate the defendant and ultimately left word at the defendant's apartment for the defendant to contact him. Upon receiving the message, the defendant phoned the officer and arranged to meet him at the state patrol office. The defendant voluntarily went to the police station where he was questioned about the burglary. After the officer falsely told the defendant that his fingerprints had been found at the scene of the crime, the defendant confessed. The officer then, for the first time, advised the defendant of his *Miranda* rights and obtained a tape-recorded confession from the defendant.

On appeal the Supreme Court upheld the defendant's burglary conviction, even though he had not been given the *Miranda* warnings prior to being questioned by the police. The controlling factor in the Court's decision was the fact that the defendant was not in custody at the time he was questioned. The Court stated that:

there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately

informed that he was not under arrest. At the close of a ½-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."

429 U.S. at 495, 97 S.Ct. at 714.

The Court also rejected the argument that the defendant should have been informed of his constitutional rights before the police questioned him because he was in a "coercive environment." As the Court observed, any questioning by the police has coercive aspects to it. However, "police officers are not required to administer *Miranda* warnings to everyone whom they question. . . . *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"

Applying the reasoning of *Mathiason* to the facts of the instant case, it is patent that the FBI did not violate Shubert's constitutional rights by questioning him on December 8, 1978. Shubert was not under arrest when this incident occurred and, in fact, had not yet been indicted. Although he appeared at the FBI office in response to a federal subpoena, he was never "in custody." Shubert was fully aware of the limited purpose of his visit and that he would be free to leave after complying with the mandate of the subpoena. Hence, it is beyond question that defendant Shubert was not the subject of the type of custodial interrogation to which *Miranda* is applicable. Moreover, even if it is assumed that the *Miranda* warnings were required in this situation, the evidence produced at the suppression hearing establishes that Shubert was advised of his *Miranda* rights before any questions were asked of him. Accordingly, for the reasons set forth herein, it is hereby

ORDERED that defendant Shubert's motion to suppress be, and the same is hereby, denied.