Argued December 3, reversed and remanded May 13, 1976

STATE OF OREGON, *Respondent,*

*v.*

CARL RAY MATHIASON, *Petitioner.*

549 P2d 673

*Gary D. Babcock,* Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary L. Hooper, Salem.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief

[ 1 ]

were Lee Johnson, Attorney General, and Thomas H. Denney, Assistant Attorney General, Salem.

(See 75 Adv Sh 3132, 22 Or App 494 for original opinion)

DENECKE, J.

## DENECKE, J.

The issue is whether defendant's confession was admissible. He initially confessed before he was given his *Miranda* rights. The state contends the confession was not obtained by "custodial interrogation." The trial court admitted evidence of the confession. The Court of Appeals affirmed. 22 Or App 494, 539 P2d 1122 (1975). We granted defendant's petition for review.

An officer of the State Police investigated a theft at a residence near Pendleton. He asked the lady of the house which had been burglarized if she suspected anyone. She replied that the defendant was the only one she could think of. The defendant was a parolee and a "close associate" of her son. The officer tried to contact defendant on three or four occasions with no success. Finally, about 25 days after the burglary, the officer left his card at defendant's apartment with a note asking him to call because "I'd like to discuss something with you." The next afternoon the defendant did call. The officer asked where it would be convenient to meet. The defendant had no preference; so the officer asked if the defendant could meet him at the state patrol office in about an hour and a half, about 5:00 p.m. The patrol office was about two blocks from defendant's apartment. The building housed several state agencies.

The officer met defendant in the hallway, shook hands and took him into an office. The defendant was told he was not under arrest. The door was closed. The two sat across a desk. The police radio in another room could be heard. The officer told defendant he wanted to talk to him about a burglary and that his truthfulness would possibly be considered by the district attorney or judge. The officer further advised that the police believed defendant was involved in the burglary and defendant's fingerprints were found at the scene. The defendant sat for a few minutes and then said he had taken the property. This occurred within five minutes

after defendant had come to the office. The officer then advised defendant of his *Miranda* rights and took a taped confession.

At the end of the taped conversation the officer told defendant he was not arresting him at this time; he was released to go about his job and return to his family. The officer said he was referring the case to the district attorney for him to determine whether criminal charges would be brought. It was 5:30 p.m. when the defendant left the office.

The officer gave all the testimony relevant to this issue. The defendant did not take the stand either at the hearing on the motion to suppress or at the trial.

*Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed2d 694, 10 ALR3d 974 (1966), held:

> "* * * [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *." (Footnotes not included.)

The majority in *Miranda* then went on to state that to secure the privilege against self-incrimination the accused must at least be advised of his constitutional rights, such as to remain silent, etc.

■ The most compulsive feature of the in-custody interrogation, the feature singled out by the majority in *Miranda,* is a person's belief that he cannot leave or break off the interrogation.

■ In *State v. Travis,* 250 Or 213, 441 P2d 597 (1968), a majority of this court interpreted *Miranda* to require, "that the police are restricted in interrogating a person suspected of committing a crime only if the questioning takes place in a 'coercive environment.' " 250 Or at 218. We believe this is an accurate paraphrase of the

idea expressed by the majority in *Miranda* when the Chief Justice wrote about "the compelling atmosphere inherent in the process of in-custody interrogation."

We hold the interrogation took place in a "coercive environment." The parties were in the offices of the State Police; they were alone behind closed doors; the officer informed the defendant he was a suspect in a theft and the authorities had evidence incriminating him in the crime; and the defendant was a parolee under supervision. We are of the opinion that this evidence is not overcome by the evidence that the defendant came to the office in response to a request and was told he was not under arrest.

The rationale of our decision is undoubtedly contrary to some decisions from other jurisdictions. *People v. Yukl,* 25 NY2d 585, 307 NY Supp2d 857, 256 NE2d 172 (1969), is an example. Three judges violently dissented in that case.

The facts in the present case are not as gross as they were in the New York case; however, we are of the opinion that to hold that the confession in the present case was not obtained as a result of "custodial interrogation" would be contrary to the rationale expressed in *Miranda.*

The state contends that whether the confession was a result of custodial interrogation is a question of fact, there is evidence to substantiate the trial court's finding and, therefore, we must affirm. The state argues, for example, that based upon the manner in which the officer testified, the trial court could have found that when the officer told the defendant he was not under arrest he truthfully expressed the state of his mind.

In *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), we stated the principles governing when the trial court's findings are controlling. In the present case we conclude that accepting the "historical facts" as favorable to the state as the trial court could find

[ 5 ]

them, the confession was the product of "custodial interrogation."

Reversed and remanded.

**HOWELL, J.,** dissenting.

I dissent.

The issue presented is whether "there was evidence of sufficient historical facts to sustain the trial court's holding." *State v. Karcher,* 252 Or 564, 566, 451 P2d 110 (1969).

When the defendant called the State Police officer, the defendant was asked where it would be convenient to meet and, as defendant had no preference, it was agreed the defendant would go to the State Patrol office. The officer told defendant he was not under arrest. After defendant admitted the theft and was given the *Miranda* warnings, the officer told him he was not arresting him and that he was free to return to his family. The entire interview lasted only one-half hour.

The defendant did not testify. I believe the above facts are sufficient to support the holding of the trial court and the Court of Appeals. Without abdicating our responsibility to determine whether the facts meet state and federal constitutional requirements, *see Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), I believe that we should give substantial consideration to the findings of the trial judge who saw and heard the witnesses. *See State v. Pressel,* 2 Or App 477, 484-85, 468 P2d 915 (1970) (Schwab, C. J., dissenting).

TONGUE, J. and BRYSON, J., join in this dissent.