## OREGON *v.* MATHIASON

No. 76–201.   Decided January 25, 1977

PER CURIAM.

Respondent Carl Mathiason was convicted of first-degree burglary after a bench trial in which his confession was critical to the State's case. At trial he moved to suppress the confession as the fruit of questioning by the police not preceded by the warnings required in *Miranda* v. *Arizona*, 384 U. S. 436 (1966). The trial court refused to exclude the confession because it found that Mathiason was not in custody at the time of the confession.

The Oregon Court of Appeals affirmed respondent's conviction, but on his petition for review in the Supreme Court of Oregon that court by a divided vote reversed the conviction. It found that although Mathiason had not been arrested or otherwise formally detained, "the interrogation took place in a 'coercive environment'" of the sort to which *Miranda* was intended to apply. The court conceded that its holding was contrary to decisions in other jurisdictions, and referred in particular to *People* v. *Yukl*, 25 N. Y. 2d 585, 256 N. E. 2d 172 (1969). The State of Oregon has

petitioned for certiorari to review the judgment of the Supreme Court of Oregon. We think that court has read *Miranda* too broadly, and we therefore reverse its judgment.

The Supreme Court of Oregon described the factual situation surrounding the confession as follows:

"An officer of the State Police investigated a theft at a residence near Pendleton. He asked the lady of the house which had been burglarized if she suspected anyone. She replied that the defendant was the only one she could think of. The defendant was a parolee and a 'close associate' of her son. The officer tried to contact defendant on three or four occasions with no success. Finally, about 25 days after the burglary, the officer left his card at defendant's apartment with a note asking him to call because 'I'd like to discuss something with you.' The next afternoon the defendant did call. The officer asked where it would be convenient to meet. The defendant had no preference; so the officer asked if the defendant could meet him at the state patrol office in about an hour and a half, about 5:00 p. m. The patrol office was about two blocks from defendant's apartment. The building housed several state agencies.

"The officer met defendant in the hallway, shook hands and took him into an office. The defendant was told he was not under arrest. The door was closed. The two sat across a desk. The police radio in another room could be heard. The officer told defendant he wanted to talk to him about a burglary and that his truthfulness would possibly be considered by the district attorney or judge. The officer further advised that the police believed defendant was involved in the burglary and [falsely stated that] defendant's fingerprints were found at the scene. The defendant sat for a few minutes and then said he had taken the property. This occurred within five minutes after defendant had come to the office. The

officer then advised defendant of his *Miranda* rights and took a taped confession.

"At the end of the taped conversation the officer told defendant he was not arresting him at this time; he was released to go about his job and return to his family. The officer said he was referring the case to the district attorney for him to determine whether criminal charges would be brought. It was 5:30 p. m. when the defendant left the office.

"The officer gave all the testimony relevant to this issue. The defendant did not take the stand either at the hearing on the motion to suppress or at the trial." 275 Ore. 1, 3-4, 549 P. 2d 673, 674 (1976).

The Supreme Court of Oregon reasoned from these facts that:

"We hold the interrogation took place in a 'coercive environment.' The parties were in the offices of the State Police; they were alone behind closed doors; the officer informed the defendant he was a suspect in a theft and the authorities had evidence incriminating him in the crime; and the defendant was a parolee under supervision. We are of the opinion that this evidence is not overcome by the evidence that the defendant came to the office in response to a request and was told he was not under arrest." *Id.,* at 5, 549 P. 2d, at 675.

Our decision in *Miranda* set forth rules of police procedure applicable to "custodial interrogation." "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U. S., at 444. Subsequently we have found the *Miranda* principle applicable to questioning which takes place in a prison setting during a suspect's term of imprisonment on a separate offense, *Mathis* v. *United States,* 391 U. S. 1 (1968), and to questioning taking place in a

suspect's home, after he has been arrested and is no longer free to go where he pleases, *Orozco* v. *Texas,* 394 U. S. 324 (1969).

In the present case, however, there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."

Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

The officer's false statement about having discovered Mathiason's fingerprints at the scene was found by the Supreme Court of Oregon to be another circumstance contributing to the coercive environment which makes the *Miranda* rationale applicable. Whatever relevance this fact

may have to other issues in the case, it has nothing to do with whether respondent was in custody for purposes of the *Miranda* rule.

The petition for certiorari is granted, the judgment of the Oregon Supreme Court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*So ordered.*

MR. JUSTICE BRENNAN would grant the writ but dissents from the summary disposition and would set the case for oral argument.

MR. JUSTICE MARSHALL, dissenting.

The respondent in this case was interrogated behind closed doors at police headquarters in connection with a burglary investigation. He had been named by the victim of the burglary as a suspect, and was told by the police that they believed he was involved. He was falsely informed that his fingerprints had been found at the scene, and in effect was advised that by cooperating with the police he could help himself. Not until after he had confessed was he given the warnings set forth in *Miranda* v. *Arizona,* 384 U. S. 436 (1966).

The Court today holds that for constitutional purposes all this is irrelevant because respondent had not " 'been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *Ante,* at 494, quoting *Miranda* v. *Arizona, supra,* at 444. I do not believe that such a determination is possible on the record before us. It is true that respondent was not formally placed under arrest, but surely formalities alone cannot control. At the very least, if respondent entertained an objectively reasonable belief that he was not free to leave during the questioning, then he was "deprived of his freedom of action in a significant way." [1]

---

[1] See, *e. g., United States* v. *Hall,* 421 F. 2d 540, 544–545 (CA2 1969)

Plainly the respondent could have so believed, after being told by the police that they thought he was involved in a burglary and that his fingerprints had been found at the scene. Yet the majority is content to note that "there is no indication that . . . respondent's freedom to depart was restricted in any way," *ante,* at 495, as if a silent record (and no state-court findings) means that the State has sustained its burden, see *Lego* v. *Twomey,* 404 U. S. 477, 489 (1972), of demonstrating that respondent received his constitutional due.[2]

More fundamentally, however, I cannot agree with the Court's conclusion that if respondent were not in custody no warnings were required. I recognize that *Miranda* is limited to custodial interrogations, but that is because, as we noted last Term, the facts in the *Miranda* cases raised only this "narrow issue." *Beckwith* v. *United States,* 425 U. S. 341, 345 (1976). The rationale of *Miranda,* however, is not so easily cabined.

*Miranda* requires warnings to "combat" a situation in which there are "inherently compelling pressures which work to undermine the individual's will to resist and to compel

(Friendly, J.); *Lowe* v. *United States,* 407 F. 2d 1391 (CA9 1969); *People* v. *Arnold,* 66 Cal. 2d 438, 426 P. 2d 515 (1967); *People* v. *Rodney P.,* 21 N. Y. 2d 1, 233 N. E. 2d 255 (1967). See also cases collected in Annot., 31 A. L. R. 3d 565, 581–583 (1970 and Supp. 1976).

It has been noted that as a logical matter, a person who honestly but unreasonably believes he is in custody is subject to the same coercive pressures as one whose belief is reasonable; this suggests that such persons also are entitled to warnings. See, *e. g.,* LaFave, "Street Encounters" and the Constitution: Terry, Sibron, Peters, and Beyond, 67 Mich. L. Rev. 39, 105 (1968); Smith, The Threshold Question in Applying Miranda: What Constitutes Custodial Interrogation?, 25 S. C. L. Rev. 699, 711–714 (1974).

[2] The Court's action is particularly inappropriate because the record of this case has not been transmitted to us, and thus our knowledge of the facts is limited to the information contained in the petition and in the opinions of the state courts.

him to speak where he would not 'otherwise do so freely." 384 U. S., at 467. It is of course true, as the Court notes, that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it." *Ante,* at 495. But it does not follow that because police "are not required to administer *Miranda* warnings to everyone whom they question," *ibid.,* that they need not administer warnings to *anyone,* unless the factual setting of the *Miranda* cases is replicated. Rather, faithfulness to *Miranda* requires us to distinguish situations that resemble the "coercive aspects"` of custodial interrogation from those that more nearly resemble "[g]eneral on-the-scene questioning . . . or other general questioning of citizens in the fact-finding process" which *Miranda* states usually can take place without warnings. 384 U. S., at 477.

In my view, even if respondent were not in custody, the coercive elements in the instant case were so pervasive as to require *Miranda*-type warnings.[3] Respondent was interrogated in "privacy" and in "unfamiliar surroundings," factors on which *Miranda* places great stress. *Id.,* at 449–450; see also *Beckwith* v. *United States, supra,* at 346 n. 7. The investigation had focused on respondent. And respondent was subjected to some of the "deceptive stratagems," *Miranda* v. *Arizona, supra,* at 455, which called forth the *Miranda* decision. I therefore agree with the Oregon Supreme Court that to excuse the absence of warnings given these facts is "contrary to the rationale expressed in *Miranda*." 275 Ore. 1, 5, 549 P. 2d 673, 675 (1976).[4]

---

[3] I do not rule out the possibility that lesser warnings would suffice when a suspect is not in custody but is subjected to a highly coercive atmosphere. See, *e. g., Beckwith* v. *United States,* 425 U. S. 341, 348–349 (1976) (MARSHALL, J., concurring in judgment); ALI, Model Code of Pre-Arraignment Procedure § 110.1 (2) (Approved Draft 1975) (suspects interrogated at police station must be advised of their right to leave and right to consult with counsel, relatives, or friends).

[4] See also Graham, What is "Custodial Interrogation?": California's

The privilege against self-incrimination "has always been 'as broad as the mischief against which it seeks to guard.'" *Miranda* v. *Arizona, supra,* at 459–460, quoting *Counselman* v. *Hitchcock,* 142 U. S. 547, 562 (1892). Today's decision means, however, that the Fifth Amendment privilege does not provide full protection against mischiefs equivalent to, but different from, custodial interrogation.[5] See also *Beckwith* v. *United States, supra.* It is therefore important to note that the state courts remain free, in interpreting state constitutions, to guard against the evil clearly identified by this case.[6]

I respectfully dissent.

MR. JUSTICE STEVENS, dissenting.

In my opinion the issues presented by this case are too important to be decided summarily. Of particular impor-

Anticipatory Application of *Miranda* v. *Arizona,* 14 UCLA L. Rev. 59, 81–82 (1966); Smith, *supra,* n. 1, at 732, 735.

[5] I trust today's decision does not suggest that police officers can circumvent *Miranda* by deliberately postponing the official "arrest" and the giving of *Miranda* warnings until the necessary incriminating statements have been obtained.

[6] See, *e. g., South Dakota* v. *Opperman,* 428 U. S. 364, 384 (1976) (MARSHALL, J., dissenting); *Baxter* v. *Palmigiano,* 425 U. S. 308, 324, 338–339 (1976) (BRENNAN, J., dissenting); *Michigan* v. *Mosley,* 423 U. S. 96, 120–121 (1975) (BRENNAN, J., dissenting); Wilkes, The New Federalism in Criminal Procedure: State Court Evasion of the Burger Court, 62 Ky. L. J. 421 (1974); Wilkes, More on the New Federalism in Criminal Procedure, 63 Ky. L. J. 873 (1975).

In *Opperman,* this Court reversed a decision of the South Dakota Supreme Court holding that routine inventory searches of impounded automobiles, made without probable cause or consent, violated the Fourth Amendment. The case was remanded, like this one, "for further proceedings not inconsistent with [the] opinion." 428 U. S., at 376. On remand, the South Dakota Supreme Court held that such searches violated a nearly identical provision of the State Constitution, and that therefore the seized evidence should have been suppressed. *State* v. *Opperman,* 89 S. D. ——, 228 N. W. 2d 152 (1976).

tance is the fact that the respondent was on parole at the time of his interrogation in the police station. This fact lends support to inconsistent conclusions.

On the one hand, the State surely has greater power to question a parolee about his activities than to question someone else. Moreover, as a practical matter, it seems unlikely that a *Miranda* warning would have much effect on a parolee's choice between silence and responding to police interrogation. Arguably, therefore, *Miranda* warnings are entirely inappropriate in the parole context.

On the other hand, a parolee is technically in legal custody continuously until his sentence has been served. Therefore, if a formalistic analysis of the custody question is to determine when the *Miranda* warning is necessary, a parolee should always be warned. Moreover, *Miranda* teaches that even if a suspect is not in custody, warnings are necessary if he is "otherwise deprived of his freedom of action in any significant way." If a parolee being questioned in a police station is not described by that language, today's decision qualifies that part of *Miranda* to some extent. I believe we would have a better understanding of the extent of that qualification, and therefore of the situations in which warnings must be given to a suspect who is not technically in custody, if we had the benefit of full argument and plenary consideration.

I therefore respectfully dissent from the Court's summary disposition.