Preston A. Trimble, Dist. Atty., Karen E. Huff, Asst. Dist. Atty., Cleveland County, for appellant.

William Douglas Geissmann, Norman, for appellee.

---

The STATE of Oklahoma, Appellant,

v.

Donald Gerald STREET, Appellee.

No. O-76-959.

Court of Criminal Appeals of Oklahoma.

Dec. 7, 1977.

## OPINION

PER CURIAM:

Donald Gerald Street, hereinafter referred to as defendant, was charged with the offense of Extortion, in violation of 21 O.S.1971, § 1481, and was tried in the District Court, Cleveland County, Case No. 75–553. A nonjury trial was held before the Honorable Elvin J. Brown on August 31, 1976; a transcript of the preliminary hearing was the only evidence submitted to the trial court by agreement of the parties. The trial court sustained the defendant's demurrer to the State's evidence. The defendant was acquitted and discharged. This is an appeal on a reserved question of

law as provided by 22 O.S.1971, § 1053, ¶ 3, from said judgment of acquittal.

The evidence at trial as presented in the preliminary hearing transcript was that on October 14, 1975, Ron Hulin, pharmacist and owner of Doctors Park Pharmacy in Norman, Oklahoma, received a telephone call while at work from an unidentified male. The man demanded that certain specified drugs and money be delivered and placed in a Dempsey Dumpster behind the laundry at Rock Creek Road and Porter streets in Norman. Coupled with this demand was a threat that there was a bomb in Hulin's house which could explode if the drugs and money were not delivered within 15 minutes. The man warned that there were five sticks of dynamite placed in the witness' home. The witness testified that this call frightened him because his wife was at home, and there were small children living next door. He stated that the man convinced him that his wife could be killed. Hulin immediately called his wife and told her to leave the house. Then he called the police. The police told him to deliver the drugs and money as directed, and they would watch the area. Hulin told the police officers that he would be driving a red MGB and would put the money and drugs in a paper sack. The witness identified State's Exhibit No. 2 as the sack which contained the aforementioned items. He then identified the drugs which were found in the defendant's car as being the drugs he had placed in the sack. The witness further testified that he arrived at the Dempsey Dumpster approximately ten minutes after receiving the telephone call.

Bud Argo, Detective Captain of the Norman Police Department, testified that he and Lieutenant Grissom took the call from Ron Hulin and immediately left the police department in an unmarked car to stake out the drop site. He stated that as they approached the area they observed a red MGB leaving the location of the drop. However, they did not see Hulin place the sack in the dumpster. The witness said that he and Lieutenant Grissom parked in a location near the Dempsey Dumpster and, shortly after arriving, observed a man drive up and park near the dumpster. He said that the man got out of his car and began sorting through the trash in the dumpster, removing some boxes and placing them in his car. The detectives did not observe him remove a sack from the dumpster.

Detective Argo further testified that he and Lieutenant Grissom followed the man for a short distance and then pulled him over. They both identified themselves as police officers, and Lieutenant Grissom checked the man's identification. Detective Argo identified the defendant as the man whom they stopped that day. The witness stated that he asked the defendant to come to the police station to answer a few questions because there were several people from the neighborhood gathering around them. The defendant agreed to go to the police station and drove his own car there, while Detective Argo and Lieutenant Grissom followed in their car. As the detectives were following the defendant they dispatched another police unit to check the Dempsey Dumpster. Detective Argo stated that when they arrived at the police station the defendant was questioned as to what he was doing in the area of the dumpster. The defendant explained that he was in the process of moving and was obtaining boxes for that purpose. This interview was recorded by the police. Argo testified that the defendant was not placed under arrest at this time, because he felt he lacked probable cause to make an arrest. Detective Argo said in the interview that:

"Well, right now, 'course you know, if you were suspect I'd go ahead and advise you of your rights and—and go ahead and interrogate you like we normally do. Right now, you drove your car in, voluntarily, and we're just talking to you. Uh, if something comes up different, then, uh, you are a suspect. Of course, I'm going to start advising you of your rights and getting ready to probably put you in jail on the thing. At this point, I'm not. Uh, you, uh, you went to an area that we were watching, you got into the dumpster that we were watching and uh, there is a package that's missing right now. The

package that was allegedly left up there is not in the trash can—the dumpster—and uh, I don't know, I haven't looked in your car, I don't know whether you got anything in there or not." (State's Exhibit No. 5, interview page 4)

Then the defendant blurted out, "Oh, you're more than welcome to look in it. I mean, there's just some boxes—a little junk in my glove box." (State's Exhibit No. 5, interview page 4) Pursuant to the defendant's invitation to search his car, Lieutenant Grissom left the room and searched the defendant's car with the assistance of Detective Bill Polk.

Detective Polk testified that he found a paper sack under the backseat of the car, which contained drugs from Doctors Park Pharmacy.

Lieutenant Grissom stated that he took the sack into the interview room and showed it to Detective Argo. At this point Detective Argo advised the defendant of his *Miranda* rights, and after being advised of these rights and acknowledging them the defendant said that he would talk to the detectives. The defendant then made a statement confessing to the crime. (State's Exhibit No. 5, interview pages 97–105)

The State's first assignment of error is that the magistrate at the preliminary hearing, the Honorable Edward M. McDanel, Special Judge, Cleveland County, erred in the construction of 21 O.S.1971, § 1481, and erroneously bound the defendant over on the charge of Attempted Extortion instead of Extortion, as originally filed. The State filed an appeal from this decision pursuant to Rule 6 of the Rules of this Court, which provides for an appeal from an adverse ruling or order of a magistrate. On November 18, 1975, the Honorable Joe Schumate, Presiding Judge of the 21st District, assigned the State's Rule 6 appeal to the Honorable Gary L. Blevins, Associate District Judge, McClain County. The appeal was heard by the Honorable Gary Blevins on November 26, 1975, and was taken under advisement. Then, on December 9, 1975, Judge Blevins upheld the appeal of the State of Oklahoma and ordered the defendant bound over for trial on the felony offense of Extortion under 21 O.S.1971, § 1481. In view of the fact that the State received a correct ruling on its appeal under Rule 6, we find it unnecessary to review the magistrate's original order.

 The second assignment of error is that the trial court committed error in sustaining defendant's motion to suppress evidence obtained from the search of the defendant's automobile. The trial court ruled that the search was illegal. The State's contention is that it was a valid consent search.

The United States Supreme Court defined "custodial interrogation" in *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), as ". . . questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." See also, *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), in which the United States Supreme Court held that where a defendant voluntarily came to the police station, was immediately informed that he was not under arrest, and left the police station without hindrance after giving an interview, the defendant was not in custody. It is clear that the defendant was similarly not in the custody of the officers in the instant case. In fact the defendant was never deprived of his freedom of action. Although the officer stopped the defendant's car, this was merely for the purpose of asking him a few questions. The officers believed that they lacked probable cause to arrest this defendant, as they only saw him remove boxes from the Dempsy Dumpster; they did not see him remove a sack. In fact, the officers had not even seen Ron Hulin drop the sack into the dumpster. It should be noted that the defendant was asked, not ordered, to come to the police station because a crowd was gathering in the residential area where he had been stopped by the police. The defendant agreed to go to the police station, and drove his own car. Both officers testified that the defendant was free to go at

**580**

any time up until the drugs were found in his automobile. The defendant was informed that he was not in custody, and that based on the information then available he was not a suspect. It was at this point that the defendant invited the officers to search his vehicle without any solicitation on their part. The officers accepted the invitation, and upon finding the incriminating evidence placed the defendant under arrest and advised him of his *Miranda* rights. He acknowledged the warning, and thereafter confessed to the crime.

We are of the opinion, and therefore hold, that where, as in the instant case, a person voluntarily proceeds to the police station for questioning, is advised that he is not a suspect, and without any solicitation on the part of the police invites them to search his automobile, in which incriminating evidence is found, such search and seizure was valid, and the trial court erred in sustaining the motion to suppress. Particularly this is true where, as in the instant case, the defendant acknowledged that his invitation to search was based on a bluff:

> "ARGO: Tell me, Don, if you knew that stuff was in your car, why did you give me permission to go out and search your car? Did you think I'd uh, did you think I'd uh, take you up on it?
>
> "STREET: No. I just said that, uh, I guess I was sorta hoping that you wouldn't." [Tr. 98].

■ The search and seizure being valid and the evidence therefore admissible we hold that the trial court also erred in suppressing the confession freely made after the defendant was placed under arrest and advised of his *Miranda* rights, since the confession was not tainted by, and the product of an illegal search and seizure, as the trial court must have believed.

For the above and foregoing reasons, the order of the trial court sustaining the motion to suppress the evidence and the order sustaining the motion to suppress the statements made by the defendant to the police officers are *REVERSED.*