Argued and submitted September 3, decision of Court of Appeals reversed and remanded to circuit court for further proceedings October 20, 1987

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DOUGLAS ROBERT MAGEE,
*Petitioner on Review.*

(TC 85-CR-0178-TM; CA A40338; SC S34006)

744 P2d 250

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Gary D. Babcock, Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review.

PER CURIAM

Carson, J., concurred and filed an opinion in which Peterson, C. J., and Campbell, J., joined.

## PER CURIAM

Defendant appealed a conviction of assault in the second degree, asserting that the circuit court erred in admitting evidence of statements obtained from defendant by police questioning without prior warnings that his answers potentially could be used in prosecuting him for an offense. The Court of Appeals affirmed without opinion. We allowed review and reverse the conviction.

The question is whether the officer questioned defendant under conditions that would lead defendant to feel "compelled" to "testify against himself," Oregon Constitution, Article I, section 12, or to "be a witness against himself," United States Constitution, Amendment V, unless the officer first told defendant of the rights that safeguard him against such compulsion.

The charge against the defendant arose from a fight at a dance which defendant attended with his brother, who was arrested after the fight. The circuit court properly made the express findings of historical facts (as distinct from legal characterizations) that are needed for appellate review of motions to suppress evidence.[1] The court found:

> "* * * Defendant came voluntarily to the Sisters Police Station to ascertain the status of his brother who was in custody. He observed his brother having a scuffle with the police officers in the police station and desired to approach the area where his brother was at. The police officers restrained him from doing so. The Defendant then indicated that he would leave. He was told that he was not free to leave at that time because he had been involved in a fight. The officer desired to learn the identity of the Defendant for purposes of future investigation.
>
> "The Defendant was then ushered into a separate office. He was told to take a seat. And after a dispute about the

---

[1] Oregon's appellate courts have long importuned trial courts to make express findings of historial facts on which they base a ruling. *See, e.g., State v. Chinn,* 231 Or 259, 263 n 1, 373 P2d 392 (1962) ("The difficulty which arises in determining the facts in cases of this character could, for the most part, be eliminated if the trial judge would make findings of fact on all contested evidence underlying his ruling upon the reasonableness of a seizure in a given case"); *see also State v. Johnson/Imel,* 16 Or App 560, 566, 519 P2d 1053 (1974) ("given the absence of any findings in the court's orders allowing the [suppression] motions, we are unable to begin the process of reviewing those decisions").

Defendant sitting down, the Defendant seated himself. The officer informed the Defendant that he needed the Defendant's name and asked the Defendant, 'What happened at the rodeo dance between you and John Stroup?' The Defendant replied nothing and then indicated [sic] as a result of the subsequent question, 'He got what he deserved. It stemmed from a prior dispute,' and that the officer wouldn't understand.

"No Miranda warnings were ever given. There was no physical restraint. The Defendant was never told not to leave except for the one situation that I mentioned previously. There were no threats or promises made to the Defendant. The officer testified that if the Defendant had refused to identify himself, the officer would have arrested him. * * *"

The court then ruled against defendant's motion on the basis of comparing the facts with those in certain decisions of the Court of Appeals.

That ruling was made before our decision in *State v. Smith,* 301 Or 681, 725 P2d 894 (1986). In *Smith,* three members of this court expressed the view that there was no independent basis in Article I, section 12 of the Oregon Constitution or other Oregon law for requiring that persons detained for questioning be given warnings like those required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), three members believed that there was such a basis in the Oregon Constitution (which long-standing statutory law had translated into a warning requirement for persons appearing before a magistrate), and that an independent Oregon source of the requirement had been recognized in *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983) and *State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983). One of the latter three judges concluded that the facts in Smith's case did not involve police custody of the kind that he deemed necessary to invoke the requirement, and Smith's conviction therefore was affirmed. *See State v. Smith, supra,* 301 Or at 702 (Jones, J., concurring). The Court earlier had been in agreement that when warnings were required, the requirement would be met if the warnings satisfied *Miranda. Sparklin, supra,* 296 Or at 89, quoted in *Smith, supra,* 301 Or at 696.

Unlike the present defendant, Smith was questioned at the scene of what began as a noncriminal investigation, not in a police station. Officers responding to a report that a

vehicle was off the road saw Smith stumble and fall down while running in a field near the vehicle. They assisted him back to the road, but they did not connect him with the disabled vehicle or suspect him of anything beyond intoxication until they received radio reports that Smith owned the car, which he admitted. The officers did not give Smith *Miranda* warnings. Eventually his statements were used to convict him of driving while under the influence of intoxicants.

*Smith* might be said to fall on one side of a hypothetical line between police station interrogation and questioning persons at roadside stops that occupied this court in *State v. Roberti*, 293 Or 59, 644 P2d 1104, *withdrawn on rehearing* 293 Or 236, 646 P2d 1341 (1982), *vacated and remanded Oregon v. Roberti* 468 US 1205, 104 S Ct 3574, 82 L Ed 2d 873 (1984), *rev'd on remand* 298 Or 412, 693 P2d 27 (1984). *See also Berkemer v. McCarthy,* 468 US 420, 104 S Ct 3138, 82 L Ed 2d 317 (1984). This case falls on the other side. Defendant was questioned in a police station in connection with a criminal investigation of a fight in which he as well as his brother had been involved. The trial court found that the officer would not let defendant leave when he wished because he had been involved in the fight. The officer's own testimony supports that finding. It is not material to this finding whether the officer contemplated any particular charges against defendant at that time.

We asked the parties to discuss the term "full custody" as a concept that might be applicable to this case, and they helpfully did so. It is not a term of statutory or constitutional law, and we find it unnecessary to define it here. The concept obviously includes extended official detention in a cell or another enclosure, with or without booking or deprivation of personal belongings. But an enclosure is not essential; one would hardly dispute that a person handcuffed on the street or in his own home is in "full custody." The concept of "full custody" is important and useful in the sense that it informs officers of a point at which no further question about the need to warn a detained person arises; the term describes a sufficient but not a necessary condition. Its usefulness ends when it shifts attention away from the effect of questioning in another form or setting that judges would and officers should recognize to be "compelling" to a debate whether the setting meets a judicial concept of "full custody."

The facts found by the circuit court make this a stronger case even for federal *Miranda* warnings than *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), which the United States Supreme Court decided contrary to this court's analysis, *State v. Mathiason,* 275 Or 1, 549 P2d 673 (1976), because Mathiason was never told that he could not leave but rather was expressly told that he was not under arrest. When this defendant was told by an officer investigating assault charges that he could not leave the police station because he was involved in the fight, this constituted "custody" adequate to require a warning before questioning. We need not decide the multifarious cases that arise in the state courts by matching their facts with those in the few cases decided by the United States Supreme Court. This is a needlessly speculative and ultimately wasteful exercise at least when Oregon law furnishes an independent basis of decision. *See State v. Mains, supra,* 295 Or at 645; *cf. State v. Kell,* 77 Or App 199, 205, 712 P2d 827 (1986). It does so in this case.

The decision of the Court of Appeals is reversed, and the case is remanded to the circuit court for further proceedings.

**CARSON, J.,** concurring.

I write separately to reiterate the view, previously expressed by the lead opinion in *State v. Smith,* 301 Or 681, 725 P2d 894 (1986), that Article I, section 12, of the Oregon Constitution does not require that persons detained for questioning by the police be given warnings similar to those required under the federal Fifth Amendment by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). In *Smith,* the lead opinion concluded that Oregon law did not require *Miranda* warnings, as such, but did require that the state establish that the admissions sought to be introduced into evidence were voluntarily made without inducement from fear or promises. *State v. Smith, supra,* 301 Or at 697. Although the facts in this case, as found by the trial court, differ from the facts in *Smith,* they are such for me to conclude that the state has established that the statements made by defendant were voluntary and not the result of any inducement from fear or promises. *State v. Nunn,* 212 Or 546, 553, 321 P2d 356 (1958), citing *State v. Blodgett,* 50 Or 329, 335, 92 P 820 (1907); *State v. Howard,* 102 Or 431, 452, 203 P 311

(1921); and *State v. Henderson,* 182 Or 147, 173, 184 P2d 392 (1947). I would not, therefore, reverse and remand on the basis of state law.

Turning to the federal law, I do conclude, however, that under *Berkemer v. McCarty,* 468 US 420, 104 S Ct 3138, 82 L Ed 2d 317 (1984), defendant here was in custody as a result of police actions at the police station. I also conclude that these actions triggered the incantations which *Miranda* requires. Because the police failed to advise defendant of his *Miranda* rights before questioning, reversal and remand of the case to the circuit court is required. Accordingly, I concur in the result.

Peterson, C. J., and Campbell, J., join in this concurring opinion.