## STATE OF CONNECTICUT *v.* GLENN L. DOYLE
### (AC 25460)

Flynn, C. J., and DiPentima and McDonald, Js.

Argued January 4—officially released September 25, 2007

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Glenn L. Doyle, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The defendant claims that (1) the trial court improperly denied his motion to suppress evidence of incriminating statements that he made to police because the statements were made during a custodial interrogation and he was not apprised of his *Miranda* rights,[1] (2) his confession was not voluntary, and (3) the court improperly admitted evidence of his desire to consult with an attorney before signing a written statement and his refusal to give a written statement. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the issues on appeal. Before his trial, the defendant moved to suppress statements made during a May 23, 2002 police interview, arguing that he was in custody at the time, was not given *Miranda* warnings and was misled as to the purpose of the interview.

The offenses concerning the defendant's appeal were alleged to have occurred in the kitchen and in the bedroom in the victim's home in East Hartford. The victim,[2] born January 23, 1991, reported that she was sexually assaulted there by the defendant. She stated that these incidents occurred between February, 2001, and February, 2002, once in the kitchen when the defendant had

---

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

the victim manipulate his penis, and he ejaculated on her and her shirt, and again in the victim's bedroom when the defendant touched her vaginal area.[3] The victim described the defendant's conduct to a friend, who told the friend's mother, a child advocate. The child advocate notified the department of children and families, which in turn notified the police. The victim also alleged that sexual contact had occurred in Manchester. The police in East Hartford and Manchester began an investigation. After watching a taped interview of the victim, the police sought an interview with the defendant.

The record of the hearing on the defendant's motion to suppress held before the trial reveals that Lieutenant Timothy McConville of the East Hartford police department telephoned the defendant and requested that he come to the East Hartford police station for an interview. McConville told the defendant that the police wanted to talk to him about his relationship with his sister's family and the victim. The interview initially was scheduled for May 22, 2002, but because the defendant's daughter was hospitalized following an overdose of pills while at school, the interview was rescheduled for May 23, 2002. At about 12 p.m. on May 23, 2002, the defendant drove to the East Hartford police department where he was met in the lobby by McConville and Detective Wayne Mora of the Manchester police department. Both McConville and Mora were in civilian clothes, and Mora had a handgun in a belt holster. The officers accompanied the defendant to an interior room in the police department. The room was eight feet by fourteen feet,

---

[3] The victim also reported two additional incidents, one in which the defendant placed his penis in her mouth at the East Hartford home and another in Manchester in which he touched her vaginal area. The defendant thereafter was charged with risk of injury to a child and sexual assault in the third degree in connection with the Manchester incident, and sexual assault in the first degree and risk of injury to a child in connection with the East Hartford incident. He was found not guilty.

and the door was closed during the interview. McConville told the defendant that the interview would not take long and that he was free to leave at any time. McConville also told the defendant that he was not in custody, and no *Miranda* warnings were given during the interview.

McConville explained that he wanted to talk to the defendant about a situation at the victim's home in East Hartford, which the defendant often visited. McConville then questioned the defendant about his relations with the victim and other family members. The defendant denied that anything inappropriate occurred. As the interview continued, the defendant related two incidents in which the victim had walked in on him, once while he was naked while urinating in a bathroom, and once while he was masturbating in a bedroom in the victim's home. The defendant denied that any inappropriate behavior occurred at these times or at any other time.

McConville asked the defendant about an incident in the kitchen of the victim's home when the defendant ejaculated on the victim. The defendant denied that this had occurred. At this point, McConville pointed to a plastic bag that McConville had placed in the interview room prior to the defendant's arrival. The bag contained a shirt and was labeled "DNA Evidence." There was no DNA evidence on the shirt. The defendant indicated that he did not recognize the shirt in the bag. McConville said the defendant should recognize it because it was the shirt that the victim was wearing when he ejaculated on her, leaving his DNA in the semen. Mora then asked the defendant if he remembered coming into the kitchen, walking to the victim, pulling out his penis and masturbating in front of the victim and ejaculating on her face. The defendant began crying and admitted that conduct, claiming that it was because the victim kept

touching his leg with her foot. As he made this statement, the defendant lowered his head, crying and sobbing. He then asked if he was under arrest. McConville responded that he could leave at any time, that the officers wanted to find out what happened, and that he could leave right then and there. The defendant stated that his life was going well and that his relationship with his daughter had been good. He stated that he had impulses he could not control, a problem for which he needed help.

The detectives then asked the defendant whether any other similar situations had occurred. The defendant related another incident in the victim's bedroom about six months before the police interview, when he rubbed and touched the victim's backside, and may have brushed against her vagina and then ejaculated on her bedsheets. Mora and McConville previously had not mentioned a bedroom incident or questioned the defendant about it, and the victim's description of the bedroom incident varied from the defendant's version. Mora also asked the defendant about a similar incident at a barbeque in Manchester. The defendant indicated that he did not remember and had been drinking that day.

The detectives then asked the defendant to sign a written statement, and the defendant indicated that he wanted to speak with a lawyer first. McConville told the defendant he was free to leave and asked the defendant to call after speaking to a lawyer to arrange a time for the written statement. Throughout the interview, the defendant was not handcuffed or physically restrained. McConville then went with the defendant to the lobby. The defendant drove away at approximately 1:10 p.m. and later called to say that he would not give a written statement. He was not arrested until June 13, 2002.

After hearing testimony from McConville and Mora, the court denied the motion to suppress before trial,

finding that there had been no custodial interrogation. The court found that the defendant was not given *Miranda* warnings, no arrest was made at the time of the interview and the defendant was not actively misled as to the purpose of the interview. The court concluded that no reasonable person could have thought that he was in custody at the time the statements were made, where the defendant knew he could leave, was told that he could leave more than once and did leave when he indicated that he was going to talk to a lawyer before reducing his inculpatory statements to writing. The court also concluded that the defendant's statements were freely and voluntarily made with a full understanding of his ability to leave at any time.

At the defendant's trial, the state introduced evidence that the defendant was arrested on June 13, 2002, by the Manchester police. At that time, he was informed of his *Miranda* rights and waived them. The defendant then stated that he had earlier confessed to the kitchen incident in East Hartford, but did not remember confessing to the bedroom incident in East Hartford.

At the trial, the defendant testified and described the circumstances of his May 23, 2002 interview in East Hartford. He stated that he did not believe the police claim that his DNA was found on the victim's shirt because, if true, the police would not even be interrogating him. The defendant also testified that he had previous felony convictions.

I

The defendant claims that the court improperly determined that he was not in custody when he initially was questioned at the East Hartford police station on May 23, 2002, without *Miranda* warnings. We disagree.

Our Supreme Court has stated: "Two threshold conditions must be satisfied in order to invoke the warnings

constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 757, 670 A.2d 276 (1996); see also *Stansbury* v. *California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994) (per curiam). We first observe that "[t]he defendant bears the burden of proving custodial interrogation." *State* v. *Pinder*, 250 Conn. 385, 409, 736 A.2d 857 (1999).

"[A]lthough the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Internal quotation marks omitted.) *State* v. *Atkinson*, supra, 235 Conn. 757; see *Oregon* v. *Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *State* v. *Pinder*, supra, 250 Conn. 409.

"A person is in custody only if, in view of all the surrounding circumstances, a reasonable person would have believed he was not free to leave. *United States* v. *Mendenhall*, 446 U.S 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497, reh. denied, 448 U.S. 908, 100 S. Ct. 3051, 65 L. Ed. 2d 1138 (1980) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Pinder*, supra, 250 Conn. 409. "[N]o definitive list of factors governs a determination of whether a reasonable person in the defendant's position would have believed that he or she was in custody." (Internal quotation marks omitted.) *State* v. *Atkinson*, supra, 235 Conn. 758. Generally, a defendant's claim that he was entitled to *Miranda* warnings on the basis of a custodial interrogation will be foreclosed where he voluntarily went to the police station and was free to leave at any time. See *State* v. *Turner*, 267 Conn. 414, 436, 838 A.2d 947, cert. denied,

543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). "[W]hen [an] individual has not been arrested, a finding of custody *requires* some indication that the officer would not have heeded his or her request to depart." (Emphasis added; internal quotation marks omitted.) *State* v. *Atkinson,* supra, 760 n.18; *State* v. *Torres,* 85 Conn. App. 303, 311, 858 A.2d 776, cert. denied, 271 Conn. 947, 861 A.2d 1179 (2004). In this respect, "whether interrogating officers have focused their suspicions upon the individual being questioned . . . is not relevant for purposes of *Miranda.*" (Internal quotation marks omitted.) *State* v. *Turner,* supra, 442 n.17, quoting *Stansbury* v. *California,* supra, 511 U.S. 326.

Our Supreme Court has stated that appellate review of this issue requires us to conduct a plenary, scrupulous examination of the record in order to make an independent determination on the ultimate issue of custody, but we must defer to the trial court's historical findings of fact unless they are clearly erroneous. *State* v. *Pinder,* supra, 250 Conn. 410–12; see also *State* v. *Lapointe,* 237 Conn. 694, 725, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996).

Circumstances similar to the present case arose in *State* v. *Turner,* supra, 267 Conn. 438, in which "the defendant voluntarily went to the police station. He was told several times that he was not under arrest. He was told several times that he was free to leave at any time, and, in fact, he did leave as soon as [police] had finished questioning him." On the basis of those facts, our Supreme Court held that any appeal claiming *Miranda* warnings were required would have been frivolous. Id., 439.

The defendant argues that the use of the false DNA evidence during the interview created a custodial situation requiring *Miranda* warnings. In support of this argument the defendant cites *Tankleff* v. *Sendowski,*

135 F.3d 235 (2d Cir. 1998). In that case, the petitioner was told untruthfully that his dying father had recovered from a coma and named him as his assailant, a kind of coercive pressure that, in the circumstances, would cause one to believe he was not free to end police interrogation by leaving. Id., 244. The United States Court of Appeals for the Second Circuit held that the petitioner was in custody and should have been advised of his *Miranda* rights at that time. Id. Contrary to the circumstances in *Tankleff*, in this case, the defendant was told he could leave the police station at any time, and he was not brought to the police station by the officers or subjected to hostile questioning for five hours. Cf. id., 240–41. Referring to *Tankleff*, the Second Circuit in *United States* v. *Newton*, 369 F.3d 659, 677 (2d Cir.), cert. denied, 543 U.S. 947, 125 S. Ct. 371, 160 L. Ed. 2d 262 (2004), stated that although coercive pressures might lead one to believe he was not free to leave police interrogation, the ultimate inquiry is whether there was a formal arrest or restraint of the degree associated with a formal arrest.

This court has considered and rejected the argument that a ruse by police renders the interview custodial. In *State* v. *DeJesus*, 91 Conn. App. 47, 82, 880 A.2d 910 (2005), cert. granted on other grounds, 279 Conn. 912, 903 A.2d 658 (2006), the defendant voluntarily agreed to go to the police station to answer questions, was told by police that he was free to leave at any time and was not restrained in any way. During the interview, the police officer posed a hypothetical to the defendant: "If [police] told [the defendant] that the police had some physical evidence regarding the matter, would the defendant change his mind about whether he had engaged in any sexual contact with the victim?" Id., 79. After this question, the defendant recanted his denials and admitted having had sexual involvement with the victim. Id. We held that the defendant's statements were

admissible because the defendant was not in custody at that time, and, therefore, *Miranda* warnings were not required. Id., 83.

In this case, the record reveals that the defendant drove to the police station. There, the detectives told him several times during the approximately one hour interview that he was not under arrest and could leave when he wanted to do so. The interview took place in an interior, closed room in the police station with the door unlocked, and the defendant was never physically restrained in any way. At the end of the interview, the defendant left the police station by himself. We conclude that a reasonable person would not have believed he was not free to leave because he did, in fact, leave.

Throughout the interview, the defendant was not handcuffed or physically restrained in any way or ordered into a confined area such as a police cruiser. See *State* v. *Atkinson*, supra, 235 Conn. 760; *State* v. *Northrop*, 213 Conn. 405, 413–15, 568 A.2d 439 (1990). He also was repeatedly told he was free to leave at any time. See *State* v. *Northrop*, supra, 415. The ruse of the DNA evidence was the only false representation by the police during the interview. See *State* v. *Lapointe*, supra, 237 Conn. 706 n.16. Finally, the defendant had prior experience with law enforcement. See *State* v. *Pittman*, 209 Conn. 596, 607, 553 A.2d 155 (1989). The record also establishes that before leaving the police station, the defendant was asked to reduce his statements to writing and that he stated that he would consult with an attorney before doing so.

The defendant testified at trial as to the circumstances of his confession and stated that he did not believe the police claim that his DNA was found on the victim's shirt because, if true, the police "would not even be interrogating him." After testifying that he had

a felony record, he reasoned that if the police had such evidence, they would not have attempted to interview him, but simply would have arrested him. Considering that testimony, the use of the DNA ruse did not change the nature of the interrogation to custodial interrogation. We conclude that there was substantial evidence supporting the court's conclusion that the defendant was not in custody.[4] Accordingly, we conclude that the

[4] As to custody, the defendant urges us to adopt a different standard under the Connecticut constitution than has been adopted under the United States constitution. This standard would require warnings pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), whenever one is subject to police interrogation. After careful consideration of the defendant's arguments under the analytical framework described in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), we decline to do so. "In order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach . . . (2) holdings and dicta of this court, and the Appellate Court . . . (3) federal precedent . . . (4) sister state decisions or sibling approach . . . (5) the historical approach, including the historical constitutional setting and the debates of the framers . . . and (6) economic/sociological considerations." (Citations omitted.) Id.

Article first, § 8, of the Connecticut constitution provides in relevant part that "[n]o person shall be compelled to give evidence against himself . . . ." The fifth amendment to the United States constitution provides in relevant part that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself . . . ." The defendant argues that by omitting the phrase "any criminal case," the drafters of the Connecticut constitution intended these protections to apply beyond a criminal proceeding that is initiated by arrest. The argument is unpersuasive because the first sentence of article first, § 8, provides in relevant part: "In all criminal prosecutions . . . ." The provisions of article first, § 8, therefore, prescribe rights arising in a criminal prosecution.

Our Supreme Court and this court have not extended the application of *Miranda* warnings beyond what is provided by the United States constitution. "*Miranda* warnings are independently required under article first, § 8, of the Connecticut constitution to the same extent that they are required under the federal constitution. . . . *Miranda* warnings, therefore, are required only for a custodial interrogation." (Citation omitted.) *State* v. *Williams*, 227 Conn. 101, 115, 629 A.2d 402 (1993).

The defendant argues that a sister state, Oregon, has extended *Miranda* protections beyond custodial interrogations under its state constitution. See *State* v. *Magee*, 304 Or. 261, 265, 744 P.2d 250 (1987) (per curiam). In *Magee*, the Oregon Supreme Court adopted a rule that "before questioning, police must give *Miranda* warnings to a person who is in full custody or in circum-

court did not improperly admit the defendant's inculpatory statements.

Finally, we note that the defendant's subsequent confession admitted at his trial rendered any alleged error harmless. In considering this issue, we turn to evidence presented during the defendant's trial. See *State* v. *Lapointe*, supra, 237 Conn. 704 n.15. At the trial, there was evidence that the police arrested the defendant on June 13, 2002, and advised him of his *Miranda* rights, which he waived, and that thereafter he stated that he had confessed to the kitchen incident, but could not recall confessing to the bedroom incident. The defendant on appeal does not argue that the June 13, 2002 statements were inadmissible, and those statements render the admission of his prior oral statement as to the kitchen incident harmless. See *United States* v. *Newton*, supra, 369 F.3d 679–80; *Tankleff* v. *Sendowski*, supra, 135 F.3d 244–45. In *Tankleff*, because the petitioner was advised of his *Miranda* rights shortly after his first confession, waived those rights and then repeated his confession, the Second Circuit upheld the admission of his later confession and upheld his conviction in part. *Tankleff* v. *Sendowski*, supra, 244–46.

stances that create a setting which judges would and officers should recognize to be compelling." (Internal quotation marks omitted.) *State* v. *Roble-Baker*, 340 Or. 631, 638, 136 P.3d 22 (2006); see also *State* v. *Smith*, 310 Or. 1, 7, 791 P.2d 836 (1990); *State* v. *Magee*, supra, 265. The circumstances of *Magee*, however, are unlike the present case because in *Magee*, the defendant was told by police that he was *not* free to leave the police station prior to interrogation. *State* v. *Magee*, supra, 263. We also note that Oregon's position has not been adopted by any other state. See, e.g., *State* v. *R. B.*, Docket No. 41618-9-1, 1998 Wash. App. LEXIS 1482, *10 (Wash. App. October 19, 1998).

Finally, we see no overriding policy reason for the change proposed by the defendant. *"Miranda* was grounded squarely in the Court's explicit and detailed assessment of the peculiar nature and setting of . . . in-custody interrogation . . . . It was the compulsive aspect of custodial interrogation . . . which led the court to impose the *Miranda* requirements with regard to custodial questioning." (Citation omitted; internal quotation marks omitted.) *Beckwith* v. *United States*, 425 U.S. 341, 346–47, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976). We therefore decline, under the Connecticut constitution, to extend the warnings required by *Miranda* to a noncustodial police interview.

## II

The defendant next claims that his confession was involuntary because the circumstances of the interview overbore his will.[5] He argues that the ruse of representing to him that police had DNA evidence linking him to a crime forced his involuntary confession. We disagree.

Our standard of review for a constitutional claim of error as to the voluntariness of a confession is plenary. *State* v. *Pinder*, supra, 250 Conn. 421. "A trial court determines the voluntariness of a confession on the basis of the circumstances. The factors may include the age of the accused, his level of education, his intelligence, whether he was advised of his constitutional rights, the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . . Other factors are the accused's prior interaction with the criminal justice system . . . and voluntary use of illegal drugs or alcohol." (Citations omitted; internal quotation marks omitted.) *State* v. *Spyke*, 68 Conn. App. 97, 101, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002). "[S]tatements by the police designed to lead a suspect to believe that the case against him is strong are common investigative techniques and would rarely, if ever, be sufficient to overbear the defendant's will and to bring about a confession to a serious crime that is not freely self-determined . . . ." *State* v. *Lapointe*, supra, 237 Conn. 732; see *Frazier* v. *Cupp*, 394 U.S. 731, 739–40, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969). Our

---

[5] The defendant stated, during the court's oral ruling on the motion to suppress, that he had not raised any claim regarding voluntariness. Nonetheless, the court ruled that "the statements were freely, voluntarily made, with a full understanding of the ability to leave at any time." Because "[t]his court reviews rulings solely on the ground on which the party's objection is based"; *State* v. *Manning*, 162 Conn. 112, 118, 291 A.2d 750 (1971); the claim is unpreserved. The state does not argue, however, that the claim was unpreserved, and we therefore review this claim.

Supreme Court recently in *State* v. *Lawrence*, 282 Conn. 141, 176, 920 A.2d 236 (2007), cited *Lapointe* to this effect.

Upon our review of the whole record, there is no indication that the police techniques used here were sufficient to overbear the defendant's will. The defendant was a sober adult who drove to the police station at the detective's request. The interview lasted only slightly more than one hour and took place in the middle of the day. As pointed out previously, the defendant testified at trial that he did not believe the statements by the police that there was DNA evidence linking him to a crime. He had prior experience with law enforcement and refused a police request to put his confession in writing without first speaking with an attorney. These facts clearly demonstrate that the defendant's will was not overborne.

The defendant also contends, as he testified, that his fragile emotional state, brought on by his daughter's recent overdose, was an additional factor that forced an involuntary confession. In considering all the factual circumstances, the court may "consider the psychological impact on an accused and evaluate the legal significance of how an accused reacted." *State* v. *Madera*, 210 Conn. 22, 41, 554 A.2d 263 (1989). In this case, there is no indication that the defendant's emotional state was such that his will was overborne by police questioning. Accordingly, we conclude that it was not improper to admit the defendant's voluntary confession into evidence.

### III

The defendant claims that the court improperly admitted evidence before the jury that he had requested to speak with an attorney before he would provide written admissions and that he subsequently refused to sign a written statement. He argues that *Doyle* v.

*Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), was thereby violated. Our Supreme Court in *State* v. *Leecan*, 198 Conn. 517, 521, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), restricted the application of *Doyle* to post-*Miranda* warning silence as has the United States Supreme Court in *Jenkins* v. *Anderson*, 447 U.S. 231, 235, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980). The defendant recognizes those precedents would uphold the court's ruling, but raises the issue for subsequent higher court review. We accordingly reject this argument.

The defendant also makes an evidentiary argument against the admission of this silence evidence. Before the trial court, he claimed that the evidence was "inappropriate, irrelevant [and] unnecessary." The defendant does not argue on appeal that the testimony was irrelevant, and our Supreme Court has held that even after *Miranda* warnings, evidence of the defendant's refusal to sign a written statement and his request to consult with counsel after an oral admission is not inadmissible if offered for a permissible purpose and not to establish his guilt through his invocation of his fifth amendment rights. See *State* v. *Cabral*, 275 Conn. 514, 520–28, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005). The evidence was presented on cross-examination of the defendant after he testified on direct examination that he felt compelled to give a false confession in order to end the police interview and care for his daughter. The fact that he did not give a written statement was raised only to ask the defendant if he had told McConville that the May 23, 2002 oral statement was untrue when the defendant called to tell McConville that he would not sign a written statement. See *State* v. *Hull*, 210 Conn. 481, 492–95, 556 A.2d 154 (1989). Even if we assume arguendo there is merit to the defendant's argument, it is clear that admission of the evidence was harmless. The case against the

defendant was strong in view of his admissions. The prosecutor did not highlight the silence evidence in summation to the jury except to point out that it bore on the defendant's claim of compulsion. We accordingly reject the defendant's argument.

The judgment is affirmed.

In this opinion the other judges concurred.