OPINION OF THE COURT
Edward M. Horey, J.
Basically the instant case involves the rights of a drunk found asleep in his car.
On July 2, 1984 the Supreme Court of the United States decided the action of Berkemer v McCarty (468 US_, 104 S Ct 3138, 82 L ed 2d 317). There the court analogized the “usual traffic stop” to a “so-called ‘Terry’ stop”. (See, 468 US, at p_, 82 L ed 2d, at p 334, 104 S Ct, at p 3150.)
In making its holding the Supreme Court refused to adopt a rule that would require Miranda warnings to be given in every traffic stop.
The court pointedly refused to adopt either a rule that Miranda applied to all traffic stops or a rule that a suspect need not be advised of his rights until he is formally placed under arrest.
What the Supreme Court determined was that a police officer who lacks probable cause for arrest but whose observations lead him reasonably to suspect that a person has committed, is committing or is about to commit a crime, may detain that *924 person briefly to investigate the circumstances that provoked suspicion. (Berkemer v McCarty, 468 US_,_, 82 L ed 2d 317, 344, 104 S Ct 3138, 3150, supra.)
The holding of the court was couched in the following language, to wit: “[t]he similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not ‘in custody’ for the purposes of Miranda.” (Berkemer v McCarty, 468 US , , 82 L ed 2d 317, 334-335, 104 S Ct 3138, 3151, supra.) Stating its confidence that the exception determined in usual traffic stops would not be abused, the court hastened to add that “If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him ‘in custody’ for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda. See Oregon v Mathiason, 429 US 492, 495, 50 L Ed 2d 714, 97 S Ct 711 (1977) (per curiam).” (468 US, at p —, 82 L ed 2d, at p 335,104 S Ct, at p 3151.) The Supreme Court concluded by stating that the doctrine determined upon in Berkemer v McCarty would mean that “occasionally” police and lower courts would have difficulty deciding exactly when a suspect has been taken into custody. (468 US, at p_, 104 S Ct, at p 3151, 82 L ed 2d, at p 335.)
The notation made was prophetic. The facts in the instant case present an occasion of the difficulty anticipated.
Here a New York State Policeman came upon the defendant in the rear seat of a stopped automobile which was parked partially off from the paved portion of a rural country highway known as the Gile Hollow Road. The evidence was that there was a very narrow shoulder or berm to the road to have permitted further removal of the vehicle from the paved portion in the area where the vehicle was parked.
The defendant was lying down asleep in the back seat of the vehicle. Awakening the defendant the officer directed him to remove himself from the vehicle. Admittedly without giving the defendant any Miranda warnings, the officer started to interrogate him. He first asked the defendant his name. The answer was not spontaneously given. The officer repeated the question and the defendant answered “Bob.” The officer next asked the defendant “Where are you going?” This question also was repeated. The defendant then answered, “Going home.” There followed the question by the officer, “Where are you coming from?” To this the defendant answered “I’m coming from Olean and going home.”
*925 The officer next asked the defendant for his driver’s license and registration. The defendant replied that he did not have a driver’s license. The registration was in the car and apparently was produced and met with the officer’s examination.
With the limited exchange which has been noted, the officer directed the defendant to enter the police vehicle where he placed him under arrest. Then for the first time the officer gave the defendant the Miranda warnings, adding a warning of the consequence if the defendant refused to take a breathalyzer test for alcohol.
This court notes with emphasis of importance that the testimony upon the hearing disclosed that there was no evidence of any accident and no other vehicles were in the area of the parked car.
The officer conceded that if the defendant had wanted to leave at any time after he had awakened him before arrest, the officer would have stopped him.
What impresses the court the most upon review is the fact that the interrogating officer never saw the defendant do anything other than sleep in the back seat of an automobile. Any information that even permits the inference that the defendant was or had been a motorist stems from the interrogation of the defendant by the officer. In sum, the only evidence or basis of suspicion of the commission of crime followed but did not precede the interrogation. Therein lies its deficiency. We are instructed by the Supreme Court that the “only relevant inquiry” in the circumstances presented in a case such as that at bar “is how a reasonable man in the suspect’s position would have understood his situation.” (Berkemer v McCarty, 468 US_,_, 82 L ed 2d 317, 336, supra.)
Applying that standard to the facts, this court concludes that a reasonable man awakened from sleep and ordered out of his car by a uniformed officer would conclude that he was in custody and being subjected to “custodial interrogation.” Even if we premised our consideration on the proposition that the defendant was dead drunk, a fact which is not in any way sustained by the evidence as no proof whatsoever of the extent of the defendant’s intoxication was produced, it must be concluded that the defendant had not, was not and was not about to commit any crime, or offense or infraction of law. Intoxication, even public intoxication, has been removed from the penal statutes of this State.
The only crime in which intoxication remains a factor in the penal system of this State is driving a motor vehicle while in an *926 intoxicated condition. (See, Vehicle and Traffic Law § 1192 [3].) Operation of a motor vehicle while ability is impaired by the consumption of alcohol is not a crime but a traffic infraction. (See, Vehicle and Traffic Law § 1192 [1].) Without proof of the defendant’s operation of the motor vehicle, there was no proof of any criminal activity on the defendant’s part. Whether or not the defendant was aware of this fact, it is certain that the police officer trained in the law was aware of it. That officer’s earliest interrogation was calculated to elicit the missing ingredient to the commission of crime which was an admission that the defendant had been operating the vehicle while intoxicated or was about to operate it in such condition.
Objectively wouldn’t it have been far more reasonable for the officer to have inquired of the defendant’s condition with such an inquiry of “Are you all right?,” or “Do you need any help?,” than to pointedly inquire into the past and future operations of the defendant of the vehicle. If, in fact, the officer was fearful that the defendant might proceed thereafter to drive the automobile before sobriety returned with danger to the defendant and the public, wouldn’t it have been reasonable for the officer to have cautioned the defendant with an admonition “to sleep it off” or “don’t drive this car until you sober up.”
For “practical purposes,” and those are the purposes our Supreme Court has stated are relevant (see, Berkemer v McCarty, 468 US _, _, 82 L ed 2d 317,335,104 S Ct 3138,3151, supra), the instant case presents a defendant who was doing precisely what countless signs, warnings and advertisements pointedly stated to be proper procedure, viz., “Don’t drink and drive.” For “practical purposes” there is no evidence, even with the equivocal admission made by the defendant that he had proceeded from Olean, that he had proceeded from that city in the vehicle as the operator and certainly there is no evidence that he proceeded in the vehicle while intoxicated. For all that appears, the defendant could have come upon the parked vehicle while cold sober, entered therein and proceeded to first drink and then fall asleep. Equally possible is the fact that the defendant had been asleep in the vehicle driven by another person. All of this is in marked contrast to the facts presented in Berkemer v McCarty where the arresting officer had observed the defendant operating an automobile and “weaving in and out of a highway lane”. (See, 468 US, at p_, 104 S Ct, at p 3140, 82 L ed 2d, at p 322.)
In the opinion of this court the instant case does not fall within the parameters of a “usual traffic stop” presented in Berkemer v McCarty (supra). Neither does it fall within the *927 parameters of a Terry stop, which permits a police officer upon observations which would lead him to suspect that a particular person had committed, was committing or was about to commit a crime to investigate the circumstances that provoke suspicion. (See, decision in Terry v Ohio, 392 US 1, 20 [1968], as amplified by United States v Brignoni-Ponce, 422 US 873.)
The facts here are in sharp contrast to those in People v Blake (5 NY2d 118) where the defendant was seated alone in the vehicle, in a drunken state and the vehicle was damaged and halted against a guardrail. They are also to be contrasted with those in Matter of Van Wormer v Tofany (28 AD2d 941 [3d Dept 1967]) where the State trooper found the defendant behind the steering wheel of an automobile which was in a ditch with the right fender “ ‘banged’ against the ditch”. Nor in the instant case is there such proof as that of front-end damage to a vehicle found at rest against a light pole as existed in Van Tassell v New York State Commr. of Motor Vehicles (46 AD2d 984 [3d Dept 1974]). Similarly there is no evidence of an accident or independent evidence from a third party that the defendant had been operating the vehicle such as characterized People v Eisenoff (121 Misc 2d 222 [Justice Ct, Dutchess County 1983]). All of the foregoing cases sought refuge in the provisions of Vehicle and Traffic Law § 1193 which authorizes an arrest without a warrant for driving while intoxicated or impaired “if such violation is coupled with an accident or collision” in which the defendant was involved. There is the additional requirement of Vehicle and Traffic Law § 1193 that the officer have “reasonable cause to believe that the violation was committed by such person.” As indicated there was no accident or collision in the case at bar. Further, note is pointedly made that all of the foregoing cases which we have attempted to distinguish were decided before July 2,1984 when Berkemer v McCarty (supra) was handed down by the Supreme Court of the United States. One can only speculate whether or not those decisions would have been the same if the test of constitutionality determined in Berkemer v McCarty had been applied.
As previously noted, it is not a crime in the State of New York to have drunk to excess, to be drinking to excess or plan on drinking to excess. Much less is it a crime to fall asleep while inebriated.
The court rejects the defendant’s argument that the instant case turns on the admitted intention of the police officer to detain the defendant. It has been specifically stated that “[a] policeman’s unarticulated plan has no bearing on the question *928 whether a suspect was ‘in custody’ at a particular time”. (See, Berkemer v McCarty, 468 US_,_, 82 L ed 2d 317, 336,104 S Ct 3138, 3152, supra.)
However, this court determines that a simple observation by a police officer of a person asleep in the back seat of an automobile does not lead reasonably to suspect that such person has committed, is committing or is about to commit a crime. Consequently, the police officer could not detain the person for the purpose of investigation under the authority of Berkemer v McCarty (supra). In the instant case, the officer engaged in “custodial interrogation” of the defendant, while the defendant was in custody and the defendant was not afforded the protection of Miranda warnings. Thus, the court concludes that the oral statement of the defendant should be properly suppressed.