**STATE of Minnesota, Appellant,**

v.

**Kari Marie STAI, Respondent.**

**No. C1-85-1788.**

Court of Appeals of Minnesota.

Feb. 11, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Keyes, County Atty., Timothy R. Faver, Asst. County Atty., Bemidji, for appellant.

Thomas L. D'Albani, Bemidji, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Kari Marie Stai is charged with the gross misdemeanor of sale of liquor to a minor. *See* Minn.Stat. § 340.73, subds. 1, 3 (1984). Following an omnibus hearing, the trial court issued a finding that statements made by Stai to Bemidji Police Department Sgt. Harlan Johnson were unlawfully obtained as a result of a failure to inform Stai of her constitutional rights prior to the interrogation. Based on that finding, the trial court ordered the statements suppressed. The State appeals from the trial court's order under Minn.R. Crim.P. 28.04, subd. 1(1). We affirm.

## FACTS

In the late night hours of May 20, 1985, two Beltrami County police officers were shot and severely injured. Two accused assailants were apprehended that same night. While in custody, one of the suspects told police that he had purchased a 12-pack of Old Milwaukee beer that night from a blonde woman in her twenties at the E–Z Stop Store in Bemidji. Neither assailant was old enough to legally purchase liquor.

The next day, Sgt. Harlan Johnson of the Bemidji Police Department contacted the E–Z Stop Store and found that respondent Stai was the only employee on duty at the store at the time the minor said he purchased the beer. Sgt. Johnson then contacted Stai by telephone. He asked her if she worked at the E–Z Stop Store; she replied that she did. Without explaining why he wanted to talk with her, Sgt. Johnson told Stai to come down to the police station. Stai mistakenly assumed the police wanted to obtain a witness statement from her about a traffic accident she had recently observed in front of the E–Z Stop Store.

When Stai arrived at the police station, Sgt. Johnson took her to an enclosed, windowless room. He did not tell her why he wanted to question her, nor did he advise her of her constitutional rights. Sgt. Johnson first asked Stai if she knew about the shooting of the two police officers, which she did, and they discussed the incident for a few minutes. Sgt. Johnson described to Stai the gruesomeness of the injuries. Until then, Stai had not known how severely the victims had been hurt. Sgt. Johnson then told Stai a juvenile was involved in the shooting and that the juvenile had been drinking. He told her that the drinking contributed to the shooting incident. Then Sgt. Johnson told Stai that the juvenile had implicated her as the person who sold him the beer he had been drinking.

Until this final revelation, Stai still assumed she had been asked to come to the police station to give a statement about the traffic accident she witnessed and that Sgt. Johnson's remarks were merely small talk about a recent event of major local interest. At the omnibus hearing, Sgt. Johnson testified that Stai was "visibly shaken" by the realization that she was being questioned because she might have had something to do with the shooting of the police officers. He testified that her mouth fell open and she had a disbelieving look on her face. Stai then related to Sgt. Johnson what she remembered about any beer sales she had made the previous night. Because Sgt. Johnson proceeded without advising respondent of her constitutional rights, the trial court suppressed the statements made by Stai during the interrogation.

Sgt. Johnson testified that he did not warn Stai of her constitutional rights because he did not intend to take her into custody. He said he had no authority to arrest her at that time, because the crime involved was a misdemeanor not committed in his presence. Johnson said that Stai was a suspect and that his intent in questioning her was to use whatever statements she made to bring a formal criminal complaint against her. When asked why he did not tell Stai that anything she said could be used against her in court, he replied that he was not sure at that time that the county sheriff wanted to charge her with the crime.

Stai testified that she was not arrested or threatened. She was not told either that she could or could not leave the police station. She said that she was intimidated by the atmosphere, and this was a police officer and he was in a police station and it was such a serious matter, I would never have dreamed of questioning him.

Stai also testified that she did not know her statements could later be used against her.

## ISSUE

Did the trial court clearly and unequivocally err in ordering the suppression of respondent's statements to Sgt. Johnson?

## ANALYSIS

In a pretrial appeal from an order suppressing evidence in a criminal case, this court will reverse the trial court only "if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment," and only where it is shown that, unless reversed, "the error will have a critical impact on the outcome of the trial." *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977).

Statements made by suspects during custodial interrogation are inadmissible unless the suspects are first advised of their constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The United States Supreme Court held in *Miranda* that "custodial interrogation" is police questioning after a person has been "taken into custody," or after a person is "otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. The Supreme Court noted that "[t]his [deprivation of freedom of action] is what we meant in *Escobedo* [*Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)] when we spoke of an investigation which had focused on an accused." *Id.* n. 4.

Sgt. Johnson did not take Stai into custody. The question here is whether respon-

dent was deprived of her freedom of action in any significant way.

At Sgt. Johnson's request, Stai went voluntarily to the police station. Sgt. Johnson's attitude towards her was friendly. Stai testified that she was not told either that she could or could not leave the police station during the interrogation. She was allowed to leave the station after she had answered all of Sgt. Johnson's questions. Appellant argues that these facts demonstrate that Stai's freedom of action was not restricted in any way.

The trial court disagreed, and this was not an unequivocal error we can reverse within the limited scope of our review under *Webber*.

█ The sole purpose in having Stai come to the police station was to question her about the possibility that she unlawfully sold liquor to a minor. Thus, the police investigation had focused on Stai as discussed in *Escobedo* and *Miranda*. For her part, Stai went voluntarily to the station to provide the police with a statement about the traffic accident she witnessed. She was not informed that she was there as the only suspect in a police investigation until after Sgt. Johnson had discussed with her the details of a suspect's involvement in the shooting incident. She was not informed that the officer wanted to talk about an unlawful sale offense or about any misconduct on her part. Because the officer proceeded as he did, Stai was deceived into going to the station, answering questions, and staying until told she was free to go.

As observed above, the *Miranda* court related custodial loss of freedom to the stage of an investigation where police have focused on an accused. The Minnesota Supreme Court has concluded that an officer can proceed without a warning statement "until he has reasonable grounds to believe both that a crime has been committed and that the defendant is the culprit." *State v. Kinn*, 288 Minn. 31, 35, 178 N.W.2d 888, 891 (1970). Sgt. Johnson had reasonable grounds to believe both that a crime had been committed and that Stai was the culprit. He testified that he expected to use any statements made by respondent to prepare a formal criminal complaint against her.

Appellant cites *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) in support of its contention that Stai was not subjected to custodial interrogation. The police in *Mathiason* also asked the defendant to come to the police station without explaining why they wanted to talk to him. When he arrived, he was told that he was a suspect in a burglary. In an attempt to elicit an admission from him, the police told him that his fingerprints had been found at the scene of the burglary, a statement that was untrue. At that point the defendant made an incriminating admission. Before he made any further statements, the police advised him of his constitutional rights. At the end of the interrogation, he was permitted to leave the police station. The Supreme Court held that Mathiason was not in custody nor otherwise significantly deprived of his freedom when he first made an admission. *Id.* at 495, 97 S.Ct. at 714. The Court held that the coercive environment of a police station did not convert the situation into one where *Miranda* applied. *Id.*

Although the circumstances in *Mathiason* are similar to those here, the cases are distinguishable. Unlike Sgt. Johnson's handling of his questioning of Stai, the police in *Mathiason* told the defendant, upon his arrival at the police station, that he was a suspect in a burglary. He made his decision to stay and answer their questions with an informed understanding of the position he was in. He voluntarily cooperated with the police investigation of the burglary.

In contrast, Stai was not told that she was a suspect until the discussion with Sgt. Johnson was well underway. She made statements to him without knowing why they were elicited. She was not given the opportunity to make any type of an informed choice about staying or leaving the police station. Sgt. Johnson knew of Stai's mistaken belief that she would be questioned about the traffic accident. He testi-

fied that Stai told him of her assumption as soon as he told her that the juvenile had implicated her as the person who sold him beer. Sgt. Johnson nevertheless proceeded to interrogate Stai without informing her of her constitutional rights.

*Mathiason* and this case involve elements of deception. In *Mathiason*, the police lied to the defendant in an attempt to elicit an admission from him. The Supreme Court concluded that the false statement was not relevant to a determination of whether the defendant was in custody for purposes of the *Miranda* rule. *Id.* 495–96, 97 S.Ct. at 714. Here, however, the deception was the cause of Stai's continued presence at the police station and is directly relevant to the deprivation of her freedom of action. Moreover, unlike in *Mathiason*, there was in this case a complete failure to inform Stai of her constitutional rights.

Our scope of review in this pretrial appeal is narrower than in the post-conviction appeal by the defendant in *Mathiason*. We must affirm the trial court unless we are clearly and unequivocally convinced that the trial court erred in its judgment. *Webber*, 262 N.W.2d at 159. We are not clearly or otherwise convinced that the trial court erred here.

### DECISION

There was no reversible error in the trial court's judgment that respondent's statements were unlawfully obtained.

Affirmed.