DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after defendant-appellant, Richard Woodson, pled no contest to one count of aggravated robbery following the trial court's denial of his motion to suppress. From that judgment, appellant now raises the following assignments of error on appeal:
"Assignment of Error Number 1
 THE TRIAL COURT ERRED BY NOT FINDING AS A MATTER OF LAW THAT THE CONFESSION OF THE DEFENDANT-APPELLANT WAS MADE IN DEROGATION OF HIS CONSTITUTIONAL RIGHTS UNDER UNITED STATES V. MIRANDA.
"Assignment of Error Number 2
 THE MERE READING OF THE MIRANDA RIGHTS TO THE DEFENDANT-APPELLANT IS NOT COMPLIANCE WITH THE LAW AND THE EVIDENCE FAILED TO ESTABLISH BOTH A VOLUNTARY STATEMENT AND A VOLUNTARY, KNOWING, AND INTELLIGENT WAIVER OF THE MIRANDA RIGHTS.
"Assignment of Error Number 3
 DUE TO CONSTITUTIONAL ERROR IN THE ADMISSION OF EVIDENCE, THE CONVICTION OF THE DEFENDANT-APPELLANT CANNOT BE MAINTAINED BASED ON THE REMAINING EVIDENCE."
On June 22, 1999, appellant was indicted and charged with one count of aggravated robbery, in violation of R.C. 2911.01(A), with a firearm specification. The charges arose out of the May 4, 1998 aggravated robbery of MarTed's Bar in Toledo, Lucas County, Ohio. During that robbery, two masked men entered the bar carrying sawed-off shot guns. They ordered the patrons and bartender to lie down, then one suspect cleaned out the cash register while the other suspect kept watch over the victims. Subsequently, a Crime Stopper tip led Detective Robert Schroeder of the Toledo Police Department to interview the girlfriend of Craig Ramsey, a suspect in the robbery. Ramsey's girlfriend revealed that Ramsey had committed the robbery and had recruited a juvenile named Richard who lived on Sanford Street, to act as backup. An investigation led officers to appellant. Although officers were unable to physically locate appellant, they did leave word with his grandmother that they wanted to talk to him. Thereafter, appellant contacted Detective Schroeder and arranged a time to come to the police station to talk to the detective.
On March 31, 1999, appellant and his mother, Theresa Woodson, arrived at the Toledo Police Department to speak with Detective Schroeder. Theresa Woodson testified at the hearing on the motion to suppress that before the interview began, Detective Schroeder pulled her aside and told her that after the interview, appellant would likely be arrested on outstanding warrants. Schroeder testified, however, that prior to and during the interview appellant was not in custody because he had come to the station voluntarily. Schroeder then ushered appellant and his mother into the interview room. Schroeder testified at the hearing below that he initially asked appellant general biographical questions but did not read him his Miranda rights. He then told appellant that he was investigating the MarTed's robbery and asked appellant if he had any involvement in that robbery. Appellant responded that he did not. Schroeder further testified, however, that appellant's mother then began to question appellant and asked him if he was involved in the robbery. Schroeder testified that in response to his mother's questions, appellant broke down crying and admitted that he had been involved in the robbery. In her testimony below, Theresa Woodson denied asking appellant if he had been involved in the robbery. Rather, both appellant and Theresa Woodson testified that Detective Schroeder questioned appellant about his involvement in the robbery. Detective Schroeder then left the room to allow appellant to compose himself. While outside of the interview room, Detective Schroeder activated the video camera in the interview room. Accordingly, the remainder of appellant's interview was tape recorded. However, while appellant was alone in the room with his mother he did not make any incriminating statements.
Approximately ten minutes later, Schroeder returned to the interview room with Detective Riddle. At this point, appellant was still crying uncontrollably and his mother was trying to comfort him. When appellant had calmed down, the officers read appellant his rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436. Appellant waived those rights and signed the form to that effect. The officers then questioned appellant about the MarTed's robbery and appellant confessed to his involvement in the offense. Appellant stated that he held a gun on the victims while Craig Ramsey emptied the cash register. At the conclusion of the interview, appellant was taken into custody and subsequently charged.
On July 13, 1999, appellant filed a motion to suppress any statements he gave to the police during the custodial interrogation of March 31, 1999. Appellant asserted that those statements were given in violation of his Fifth Amendment rights in that he was in custody and subject to an interrogation prior to being given his Miranda rights. On August 5, 1999, the case proceeded to a hearing on the motion to suppress at which Detectives Schroeder and Riddle, Theresa Woodson and appellant testified. On August 26, 1999, the trial court entered an order denying the motion to suppress. Because appellant did not request findings of fact and conclusions of law, the trial court did not issue an opinion in support of his ruling. In light of the trial court's ruling on his motion to suppress, appellant withdrew his prior plea of not guilty and entered a plea of no contest to the offense of aggravated robbery. With appellant's change in plea, the state agreed to drop the gun specification. Appellant was then found guilty of aggravated robbery in violation of R.C. 2911.01(A)(1) and sentenced to a term of three years in prison. It is from that judgment and the ruling on his motion to suppress that appellant now appeals.
Appellant's three assignments of error are interrelated and, therefore, will be discussed together. Appellant asserts that the trial court erred in failing to suppress his confession because he first confessed prior to having been read his rights pursuant to Miranda and while he was subject to a custodial interrogation. Appellant further argues that because his first confession was obtained in violation of hisMiranda rights, his subsequent confession was tainted and the trial court erred in failing to suppress it. Absent his confession, appellant contends that the remaining evidence could not sustain a conviction and, therefore, his conviction must be overturned.
This court has stated that "it is the function of the trial court to weigh the evidence and to determine the credibility of witnesses when the issue on review is a ruling on a motion to suppress." Maumee v. Johnson
(1993), 90 Ohio App.3d 169, 171, citing State v. DePew (1988),38 Ohio St.3d 275. Accordingly, the function of the appellate court "is to review the record to determine whether substantial evidence exists to support the trial court's ruling." Id.
Pursuant to Miranda, supra, an individual must be informed of certain constitutional rights when taken into custody or otherwise significantly deprived of his freedom and subjected to interrogation by law enforcement officials. Id. at 478-479. Custody requires "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.Oregon v. Mathiason (1977), 429 U.S. 492, 495. Interrogation requires "express questioning or its functional equivalent" which the police should know is "reasonably likely to elicit an incriminating response * * *." Rhode Island v. Innis (1980), 446 U.S. 291, 300-301.
The issue raised in these assignments of error was specifically addressed by the United States Supreme Court in Oregon v. Elstad (1985),470 U.S. 298, where the court considered "whether the Self-Incrimination Clause of the Fifth Amendment requires the suppression of a confession, made after proper Miranda warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the defendant." Id. at 303. In Elstad, the defendant was charged with first-degree burglary. He moved to suppress both his oral and written statements. He argued that his initial unwarned oral statement "let the cat out of the bag" and tainted his written confession as "fruit of the poisonous tree" of the Miranda violation. The United States Supreme Court disagreed holding that "* * * a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Id. at 318. In such circumstances, a suspect's second "Mirandized" statement will be admitted into evidence if the suspect's waiver is deemed voluntary. The so-called "voluntariness test" requires an examination of the totality of the circumstances surrounding each confession. Oregon v. Bradshaw (1983), 462 U.S. 1039. See, also, State v. Dixon (1995), 101 Ohio App.3d 552.
Substantial evidence presented at the hearing on the motion to suppress supports the conclusion that appellant's first confession occurred in response to questioning by his mother. Although Detective Schroeder initiated the questioning by asking appellant if he was involved in the robbery, appellant answered "no" to that question. It was only in response to his mother's questioning that appellant broke down and confessed to his participation in the crime. Accordingly, we cannot say that appellant's initial confession was the result of a "custodial interrogation." Rather, there was substantial evidence to support the conclusion that the initial confession was voluntary within the meaning of the Fifth Amendment.
After the initial confession, Detective Schroeder left the interview room for approximately ten minutes. During this time, the video recorder was activated and appellant's conversation with his mother was recorded. This tape shows a distraught appellant unable to gain control of himself during the time that Detective Schroeder was out of the room. When Detective Schroeder returned with Detective Riddle, appellant continued to cry for several minutes. Ultimately, appellant gained control of himself. The detectives then read him his Miranda rights. The videotape of that interview reveals that appellant appeared to understand those rights and knowingly, intelligently and voluntarily waived them. He then proceeded to tell the detectives about the robbery and his role in it. In our view, the totality of the circumstances surrounding this interrogation supports the finding that appellant knowingly and voluntarily waived his Miranda rights before confessing to the robbery. Accordingly, the trial court did not err in denying appellant's motion to suppress and appellant's assignments of error are not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _________________________________ Mark L. Pietrykowski, J.
Peter M. Handwork, J., Melvin L. Resnick, J.