NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0575n.06

No. 09-5124

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

**Aug 31, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

       v.

MARK GLENN IVY,

    Defendant-Appellant.

On Appeal from the United States District Court for the Western District of Tennessee

————————————————————————/

**Before:**    **GUY, MOORE, and GRIFFIN, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Having been indicted for possession of child pornography with a criminal forfeiture count included, the defendant Mark Ivy filed a motion to suppress certain statements made to law enforcement officers. After receiving briefs and conducting hearings on two separate dates, the district judge denied the motion to suppress. Ivy then entered a conditional guilty plea, reserving his right to challenge on appeal the denial of his suppression motion. After reviewing the courts factual findings for clear error and its conclusions of law *de novo*, we find no error requiring reversal. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006).

**I.**

At issue in this appeal are three statements made to federal law enforcement officers on January 12, 2007, February 8, 2007, and August 22, 2007. Defendant denies neither the making nor the substance of these incriminating statements. There was little difference between the government's and the defendant's versions of what occurred. Where there were differences, the district court made credibility determinations and found the government's chief witness to be credible while finding that the defendant lacked credibility. These credibility issues were relevant to the only real substantive issue raised by Ivy, which was whether a reasonable person in his position would believe that he was in custody or had otherwise been deprived of his freedom by law enforcement officers at the time he made the statements that were the subject of the suppression motion.

The first contact between defendant and law enforcement officers occurred on January 11, 2007, when two officers went to a residence at 6490 Birkenhead Road, Memphis, Tennessee. They were investigating internet child pornography and although they knew the name Mark Ivy, they did not know if he lived at that address. When the officers arrived at the house they were met at the door by Ivy, and after the officers identified themselves they were invited into the house. Ivy admitted that he lived at this address with his fiancée Christi Blalock. After the officers told Ivy what they were investigating, he told them there were no children in the house, and that he had never touched a child. But, he also said that he wanted to talk to an attorney before answering any questions about internet pornography. The agents asked nothing further and left the house after giving Ivy a telephone number at which he

could reach them after he talked to an attorney. Nothing even remotely resembling a custodial investigation occurred at this first meeting, thus there was no necessity of giving Ivy his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966).

Later that day the agents met with Blalock, and she signed a consent-to-search form for the Birkenhead address. Nonetheless, on the advice of an Assistant United States Attorney (AUSA), the officers secured a search warrant for that address. The next day, January 12, 2007, no one was home when the agents arrived to execute the warrant. Not wanting to make a forceful entry, they contacted Blalock who told them she would contact Ivy and have him call the agents. Defendant did contact the agents and advised them he was on his way to the house and asked if he was going to be arrested. The agents told him he was not going to be arrested, but they did need a key to make a non-forceful entry into the house.

When Ivy arrived, he furnished the officers with a key and volunteered that he was going to cooperate with the officers. Since Ivy had indicated the day before that he wanted to consult with an attorney, one of the agents, Donald Obermiller, contacted an AUSA who told him it was permissible to proceed. Before proceeding further, however, Obermiller got a signed statement from Ivy indicating his willingness to cooperate. Although Ivy was not in custody, he was advised of his *Miranda* rights and told to read the advice-of-rights form since he had rescinded his earlier request to speak to an attorney. After reading the advice-of-rights form, Ivy signed it. The district court determined that Ivy was not in custody nor had he been otherwise deprived of his freedom.

At this point the defendant told the officers he had destroyed the hard drive on his computer, which was the principal item the officers had sought to secure with the search warrant. Ivy told the officers where he had disposed of the hard drive parts and took the officers to that location, but the hard drive was too damaged to have any evidentiary value. Meanwhile, back at the house Blalock had arrived and assisted the officers in their search including showing them some secret hiding places. During the search, the officers discovered a marijuana growing operation in the attic, but no federal charges grew out of this discovery. After completing their search the officers asked Ivy if he would come to their office for a further interview, and he agreed to do so driving to their office alone in his own vehicle.

During the office interview that ensued, defendant admitted to growing the marijuana and made a number of incriminating statements relative to his internet pornography activities. His statements were reduced to writing, and he signed the written copy. Defendant was not arrested at that time, and he left the office on his own. At all times during the interview Ivy was coherent, could read and write, and did not appear to be under the influence of any drugs or alcohol.

Almost a month later, on February 8, 2007, the defendant returned to the agents' office unescorted and in his own automobile. He was again advised of his *Miranda* rights, indicated that he understood his rights, and signed the advice-of-rights form. Defendant continued to cooperate with the officers primarily by giving information as to some of his internet contacts. On August 22, 2007, defendant, on his own, again returned to the agents'

office, again was advised of his rights and signed the form. He was at the office for less than an hour, was not arrested, and again left on his own.

Defendant was indicted in August 2007, and subsequently filed his motion to suppress on October 15, 2007. At the suppression hearings held after the motion was filed and at which defendant testified, all of the above-referenced documents were admitted into evidence.

## II.

Ivy argues that he was in custody—not when the officers first visited on January 11—but when they requested entry to execute the search warrant on January 12. This, he argues, entitled him to *Miranda* warnings and required voluntary and knowing waiver. The only challenge to the statements on February 8 and August 22 was that the statements were the fruit of the poisonous tree. "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977); *see also Thompson v. Keohane*, 516 U.S. 99, 102 (1995). To answer this question, the "relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *see also Beckwith v. United States*, 425 U.S. 341, 345-47 (1976).

When defendant testified at the suppression hearing, he stated that the agents said he was best served by not having an attorney and that he would be better off cooperating. He indicated that he felt intimidated by the agents in reaching some of his decisions. As to those instances in which what the defendant said was inconsistent with what the agents said, the

district judge resolved these credibility issues against the defendant. Given the circumstances of Ivy voluntarily returning to the residence to admit the agents, the length of time that the cooperation by Ivy continued, the fact that he was not arrested until several months after his initial contact with the agents, all of the documents he signed indicating he knew his rights and was voluntarily cooperating, and the fact that his fiancée was cooperating with the agents, there is ample support for our conclusion that no clear error was made by the district court in reaching its credibility and factual determinations. Once we have resolved this issue, our *de novo* review of the legal conclusion leads us to the same result reached by the district court since the legal conclusion was driven by the factual underpinnings of what occurred. Viewed objectively, we agree that Ivy was not in custody when he made the challenged statements.

**AFFIRMED**.