

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00218-CR

DEREK WRYAN WILSON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1290837D

----------

## CONCURRING OPINION

----------

I concur in the result reached by the majority opinion because I agree that the majority has properly applied *Dowthitt* and its progeny in arriving at the conclusion that in this case Wilson was not legally in custody, but I write separately to voice my belief that what the officers in this case did was deliberately circumvent *Miranda* by choosing to delay their arrest of the only suspect in order to obtain a confession. *Miranda v. Arizona*, 384 U.S. 436, 450,

86 S. Ct. 1602, 1615 (1966); *Dowthitt v. State*, 931 S.W.2d 244, 251 (Tex. Crim. App. 1996).

Here, during the interview, Detective Woodside repeatedly expressed to Wilson that he was their only suspect. Woodside can be heard throughout the interview saying "Everything leads to you," "I'm telling you right now you did this," and "My investigation leads right to you." And the facts of this case quickly bear out that Detective Woodside was correct. There is no possible suspect in this case other than Wilson, which begs the question: why did the police not arrest Wilson at the moment they knew he was the assailant? The logical answer is that they wanted a confession, a confession that the police intended to use against Wilson at trial. *See Esparza v. Quarterman*, No. SA-07-CA-265-FB, 2010 WL 9532282, at *45 (W. D. Tex. Mar. 24, 2010) ("A practice the police should know is reasonably likely to evoke an incriminating response from a suspect amounts to 'interrogation.'"). Indeed, throughout the interview, Detective Woodside can be heard telling Wilson that the video of his interview would be played to a jury and that no jury would believe anything other than that Wilson had purposely assaulted Amy. Detective Woodside even told Wilson that he himself was going to testify against Wilson at trial because he had no doubt that Wilson was the assailant.

The setting in which this interview took place had all the markings of an interrogation. The detectives interviewed Wilson in the middle of the night in a small room at the police station. Both Detectives Woodside and Eubanks used

2

the classic interrogation techniques by tag-teaming their questioning, by leaving the room claiming that they needed to check on something just as Wilson began to unroll his confession, and by using frequent intimidating language that Wilson needed to "man up." Detective Eubanks even gradually scooted his chair closer and closer to Wilson as Wilson began to express his guilt, eventually serving as a human barrier between Wilson and the door.

All of these tactics echo the psychological interrogation methods discussed in *Miranda* which prompted the Supreme Court of the United States to dictate that a defendant be read his rights to remain silent and invoke counsel. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1615. In *Miranda*, the Court expressed concern that modern-day interrogations involved psychological stress borne out by interviewing the suspect at the police station and expressing confidence in the suspect's guilt:

> "'If at all practicable, the interrogation should take place in the investigator's office or at least in a room of his own choice. The subject should be deprived of every psychological advantage. In his own home he may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions of criminal behavior within the walls of his home.'"

> . . .

> "[Police interrogation manuals] instruct the police to display an air of confidence in the suspect's guilt and from outward appearance to maintain only an interest in confirming certain details. The guilt of the subject is to be posited as a fact. The interrogator should direct his comments toward the reasons why the subject committed the act, rather than court failure by asking the subject whether he did it. . . . These tactics are designed to put the subject in a psychological state where his story is but an elaboration of what the police purport

3

to know already—that he is guilty. Explanations to the contrary are dismissed and discouraged. The texts thus stress that the major qualities an interrogator should possess are patience and perseverance." *Miranda*, 384 U.S. at 449, 86 S. Ct. at 1615.

These quotes from *Miranda* detailing the psychological techniques utilized in an interrogation prompting the necessity that a suspect be informed of his rights is precisely what transpired in this case. The officers routinely expressed confidence that Wilson was guilty, they interviewed him in a small room at the police station in the middle of the night, and this "incommunicado interrogation of [Wilson] in a police-dominated atmosphere, result[ed] in self-incriminating statements without full warnings of [his] constitutional rights." *Id.* at 445, 1612.

But these coercive police tactics are deemed lawful because the police told Wilson that he was free to leave at the start of the interview. *See Dowthitt*, 931 S.W.2d at 255 ("[C]ustody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest."). That, however, was simply a ruse because the police were finished investigating who had assaulted Amy. They knew Wilson had done it. All they wanted was a confession. And the officers in this case appear to have skirted by *Miranda* to obtain one by postponing Wilson's arrest and delaying telling him he was not free to leave. *See Oregon v. Mathiason*, 429 U.S. 492, 499, 97 S. Ct. 711, 716 n.5 (1977) (J. Marshall dissenting) ("I trust today's decision does not suggest that police officers can circumvent *Miranda* by deliberately postponing the official

4

"arrest" and the giving of *Miranda* warnings until the necessary incriminating statements have been obtained."); *see also Missouri v. Seibert*, 542 U.S. 600, 620, 124 S. Ct. 2601, 2615 (2004) ("The police used a two-step questioning technique based on a deliberate violation of *Miranda*.").  Thus, I write separately to express my concerns that such tactics by law enforcement result in nothing more than a rhetorical circumvention of *Miranda* and its progeny.  But because that appears to be the law and controlling precedent in this case under *Dowthitt*, I concur with the majority's opinion.


/s/ Bill Meier
BILL MEIER
JUSTICE

PUBLISH

DELIVERED:  August 14, 2014

5