OPINION
Defendant-appellant Gregory McCrary appeals from his conviction and sentence, following a no-contest plea, for Gross Sexual Imposition and for Aggravated Burglary. McCrary contends that the trial court erred when it denied his motion to suppress statements he made to police officers. McCrary contends that the statements were the result of custodial interrogation to which he was subjected before he was given warnings pursuant to Miranda v. Arizona (1966), 384 U.S. 436. The trial court found that he was not in custody when these statements were given. Although the testimony was conflicting, the testimony of the police officers, which was not inherently incredible, supported the trial court's finding. Accordingly, the judgment of the trial court is Affirmed.
 I
McCrary's fingerprint was found in an apartment that was the scene of at least one of the offenses with which he was charged. When the fingerprint at the scene was matched with a fingerprint of McCrary's on file, police officers went to talk to McCrary. What happened thereafter is succinctly set forth in the trial court's findings of fact, in its decision and order overruling McCrary's motion to suppress, as follows:
 1. On or about April 25, 2000, Detectives Olinger and Wolford of the Dayton Police Department went to the Long John Silver's, located at 3303 N. Gettysburg Drive. The Defendant was a cook and cashier at the restaurant and was working on that date.
 2. The detectives wanted to talk to the Defendant because his name came up in the investigation of the crimes for which he was later indicted. The detectives asked the Defendant to step outside so that they could talk to him. They told the Defendant that he was free to go.
 3. The detectives asked the Defendant if he knew where Crest Avenue was located. The Defendant stated that he knew where it was and offered to provide directions.
 4. The detectives then drove the Defendant to the Crest Avenue location where the offenses occurred. The detectives pulled in front of the Crest Avenue address and asked the Defendant if he had ever been there before and he replied that he had not.
 5. The detectives then left the Crest Avenue address and drove to the police station with the Defendant in the back of the cruiser.[1] While en route, Detective Wolford then asked the Defendant to write a statement and the Defendant did so. In his statement, the Defendant stated that he had never been inside any other apartment on Crest Avenue other than his sister's.
 6. When the detectives arrived at the police station with the Defendant they put him in an interview room and continued to advise the Defendant that he was free to go. Detective Lawson of the Dayton Police Department also told the Defendant that he was not under arrest. At no time was the Defendant handcuffed.
 7. Apparently, detectives had found the Defendant's fingerprints in one of the apartments. Detective Lawson asked the Defendant why he thought his fingerprints were found in the apartment. He told the Defendant to think about it and that he would be back in fifteen to twenty minutes.
 8. When Detective Lawson came back to the interview room, the Defendant told him that the whole situation concerning the crimes was "weighing heavily on his chest." At that point, the Defendant was read his Miranda warning and signed a waiver of his rights.
 9. After the Defendant had been placed under arrest, he gave a detailed written confession and answered questions asked of him by Detective Lawson.
After charges were formally instituted against him, McCrary moved to suppress the statements he made, contending that they were the product of custodial interrogation preceding the administration of Miranda
warnings. Following a hearing, McCrary's motion to suppress was denied. Thereafter, he pled no contest to two of the charges pending against him, the other charges were dismissed, he was found guilty of the charges to which he pled no contest, and he was sentenced accordingly. From his conviction and sentence, McCrary appeals.
 II
McCrary's sole assignment of error is as follows:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS INCRIMINATING STATEMENTS GIVEN DURING AN ILLEGAL, DE FACTO CUSTODIAL, INTERROGATION.
McCrary contends that he was in custody when he made his first, oral incriminating statement to the police. The police officers who testified acknowledged that this first, oral incriminating statement was given before Miranda warnings were given. McCrary testified at the hearing that his subsequent, written incriminating statement preceded the administration of any Miranda warnings. However, the police officers who testified contradicted McCrary on this point. They testified that theMiranda warnings were given as soon as McCrary had made the oral incriminating statement, and preceded his written incriminating statement.
Miranda warnings are only required as a predicate for custodial interrogation. Neither the fact that one is a suspect, nor the fact that one is being questioned at a police station requires a finding of custodial interrogation. Oregon v. Mathiason (1997), 429 U.S. 492, 495,97 S.Ct. 711, 50 L.Ed.2d 714.
The issue is whether an objectively reasonable person in the defendant's position would have understood that he was in custody, and was likely to remain in custody for more than a short period of time (e.g., a traffic stop). The following factors have been used to assess how a reasonable person in the defendant's situation would understand his situation:
 1. What was the location where the questioning took place — i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;
 2. Was the defendant a suspect at the time the interview began (bearing in mind that Miranda warnings are not required simply because the investigation has focused);
 3. Was the defendant's freedom to leave restricted in any way;
 4. Was the defendant handcuffed or told he was under arrest;
5. Were threats made during the interrogation;
 6. Was the defendant physically intimidated during the interrogation;
 7. Did the police verbally dominate the interrogation;
 8. What was the defendant's purpose for being at the place where questioning took place? For example, defendant might be at a hospital for treatment instead of being brought to the location for questioning;
 9. Were neutral parties present at any point during the questioning;
 10. Did police take any action to overpower, trick or coerce the defendant into making a statement.
 State v. Estepp (Nov. 26, 1997), Montgomery App. 16279, unreported, at 5.
The trial court's findings of fact were based on the testimony of the police officers at the suppression hearing. Much of their testimony was in conflict with the testimony of McCrary, who also testified at the suppression hearing. Although McCrary takes exception to the police officers' testimony, we have reviewed the transcript, and we find that there is nothing inherently incredible in the testimony of the police officers. Consequently, we find no error in the trial court's decision to credit that testimony in arriving at its findings of fact.
Based on the testimony of the police officers, which the trial court found to be credible, factors 3, 4, 5, 6, and 10, above, favor the State. Furthermore, we find nothing in the record to suggest that the police verbally dominated the interrogation. Indeed, their tactics seems to have been exactly the opposite; the interrogating police officer left McCrary alone after challenging him to find an explanation for his fingerprint having been found in one of the apartments. When the officer returned fifteen to twenty minutes later, McCrary confessed. Thus, the seventh factor is in favor of the State.
Factors one, eight and nine are in favor of McCrary. Although the police officers testified, and we have taken their testimony as true, that McCrary was told that he was free to leave, the questioning at the police station was at a location where the ordinary person would feel less comfortable and more restricted. Also, the purpose for being at that location was clearly identified as being for the purpose of questioning McCrary. There were no neutral parties present at any point during the questioning. Finally, the second factor set forth above is in McCrary's favor. By the time the interview began in the police station, any reasonable person in McCrary's position would have realized that he was a suspect; that is, that the police officers, while not being certain, suspected that McCrary was the perpetrator of the burglaries they were investigating.
Thus, of the ten factors set forth in Estepp, supra, six are in the State's favor, and four are in McCrary's favor. Although we do not mean to suggest that the analysis is a simple counting exercise, we conclude, based upon the totality of circumstances, that a reasonable person in McCrary's position would not have understood himself to have been in custody for more than a short period of time, as in a traffic stop, which does not require Miranda warnings. This conclusion depends significantly upon the testimony of the officers, which the trial court specifically credited, that they told McCrary, both in the car and again at the police station, that he was free to leave, that the door to the interrogation room was left open, and that the exit to the outside was only ten feet from the door to the interrogation room.
At oral argument, McCrary contended that he was not free to leave because he had no money on his person, and so had no way of returning to his place of work without a ride from the police. That McCrary was completely without the funds necessary to ride a bus or telephone a friend is not apparent from the record. We are not persuaded from the evidence in this record that McCrary was so dependent upon the police for transportation that he was effectively in custody for more than a short period of detention.
McCrary's sole assignment of error is overruled.
 III
McCrary's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.
[1] The testimony of the police officers, which McCrary did not dispute, was that their vehicle was an unmarked car, and that they were not in uniform, although they identified themselves as police officers. The officers testified that the car door was not locked, although McCrary disputed this.