**UNITED STATES of America,
Plaintiff,**

v.

**Tyrone Orlonde COX, Defendant.**

**No. CR. 04–50003.**

United States District Court,
E.D. Michigan,
Southern Division.

June 25, 2004.

Robert W. Haviland, U.S. Attorney's Office (Flint), Flint, MI, for USA, Plaintiff.

Kenneth R. Sasse, Federal Defender Office, Federal Defender, Federal Defender Office, Flint, MI, for Tyrone Orlonde Cox (1), Defendants.

### *OPINION AND ORDER DENYING MOTION TO SUPPRESS STATEMENTS*

GADOLA, District Judge.

Before the Court is Defendant's motion to suppress statements. The Court held an evidentiary hearing on the motion on May 21, 2004. For the reasons set forth below, the Court will deny the motion.

On February 4, 2004, the grand jury rendered a one-count indictment against Defendant: felon in possession of a firearm, 18 U.S.C. § 922(g)(1). According to

the indictment, Defendant knowingly possessed a firearm (Davis Industries Model P–32: .32 caliber semi-automatic pistol with an obliterated serial number) on November 26, 2003, at 5406 Granville, Flint, Michigan. Furthermore, according to the indictment, Defendant has three felony convictions in Genesee County Circuit Court: carrying a concealed weapon, October 27, 2003; possession of cocaine, April 26, 1990; and attempted uttering and publishing of forged instruments, June 2, 1987; each is punishable by imprisonment of more than one year.

On April 28, 2004, the grand jury rendered a first superseding indictment. The first superseding indictment did not delete any allegations contained in the indictment. The first superseding indictment added a second firearm to count one (Harrington & Richardson model 632, .32 caliber revolver with serial number AN22182). The first superseding indictment also added count two, which alleges possession of cocaine base (i.e., crack cocaine) on November 26, 2003, 21 U.S.C. § 844.

In his motion, Defendant seeks to suppress statements made to an ATF agent, Mark Kloostra, on November 26, 2003, which tend to show that he illegally possessed firearms and narcotics: he stated that he lived at his present residence for eleven years and that he lived alone. Earlier that day, Kloostra discovered two firearms and narcotics at Defendant's present residence.

Defendant claims that these statements were elicited in violation of his Fifth Amendment right against self-incrimination because he was in custody and did not receive *Miranda* warnings when he was questioned by Kloostra. The Government concedes that *Miranda* warnings were not given and that Kloostra's questioning constituted an interrogation of *Miranda* purposes. *See* Gov't Post–Hrg. Br. at 3.

Thus, the only question before the Court is whether Defendant was in custody at the time of the questioning.

It is well established that "not all interrogations need to be immunized by *Miranda* warnings" and that the "warnings are only needed in cases of 'custodial interrogations.'" *Singleton v. Carter,* 74 Fed.Appx. 536, 541, 2003 WL 22025026 (6th Cir.2003). The Supreme Court "defined a 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *United States v. Williams,* 282 F.Supp.2d 586, 595 (E.D.Mich.2003) (Gadola, J.) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The Supreme Court has established the following standard for determining whether an individual was in custody for *Miranda* purposes:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, *would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.* Once the scene is set and the players' lines and actions are reconstructed, *the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.*

*Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (notes and internal quotations omitted; emphasis added).

The circumstances surrounding the interrogation in this case are as follows. In November 2003, Kloostra obtained a search warrant for Defendant's residence

at 5406 Granville Avenue in Flint. *See* Tr. at 6–7. Before executing the warrant, Kloostra spoke with Defendant's state probation officer, Jeff McGraw, on November 25, 2003. *See id.* at 7. Kloostra advised McGraw that Kloostra had obtained a search warrant for Defendant's residence. *See id.* McGraw informed Kloostra that Defendant had a reporting appointment with McGraw at the Genesee County Probation Office in Flint on November 26, 2003. *See id.* Kloostra advised McGraw that Kloostra would like to speak with Defendant at that time. *See id.*

Kloostra met and spoke with Defendant at the probation office on November 26 between approximately 1:00 and 1:30 p.m. *See id.* at 8, 12. At that time, Kloostra advised Defendant that Kloostra had obtained a search warrant for Defendant's residence for firearms and narcotics. *See id.* at 8. Kloostra informed Defendant that Kloostra intended to perform the search of the residence that afternoon and that Defendant would have to stay at the probation office until Kloostra completed the search and returned to the probation office. *See id.* at 8–9. Kloostra further advised Defendant that Kloostra was going to handcuff Defendant for safety purposes: for Defendant's safety and for the safety of the employees of the probation office. *See id.* Kloostra then, while discussing the aforementioned matters with Defendant, handcuffed Defendant and left Defendant's hands in front of Defendant's body. *See id.* 8–9, 17. Kloostra handcuffed Defendant in the office of another probation officer named Tony Ford. *See id.* at 12.

Next, to avoid a forced entry, Kloostra asked Defendant if Defendant would give Kloostra the keys to Defendant's residence. *See id.* at 8, 17. Defendant agreed. *See id.* at 9, 17. Defendant advised Kloostra that, at that juncture, Defendant's friend, Maurice, had Defendant's keys and that Maurice was outside of the probation office waiting in a vehicle. *See id.* at 9. McGraw went outside to locate Maurice, and then, after locating Maurice, McGraw returned inside with Maurice. *See id.* Defendant then provided the keys to Kloostra and explained how to enter the residence. *See id.*

Then, leaving Defendant in Ford's office in the custody of McGraw and other probation officers, Kloostra executed the search warrant at the residence. *See id.* at 10, 12. When Kloostra left, Maurice was sitting next to Defendant in Ford's office. *See id.* at 13. After completing the search, Kloostra returned to McGraw's office. *See id.* at 10, 13. Kloostra returned approximately eighty minutes later. *See id.* When Kloostra returned Defendant was still handcuffed and was still in Ford's office with Maurice as well as with McGraw and/or Ford. *See id.* at 10, 13–14.

Once Kloostra returned to Ford's office, he spoke with Defendant. *See id.* at 10. At that time, Kloostra unhandcuffed Defendant and returned Defendant's personal property, i.e., the keys. *See id.* at 10, 13–15. Kloostra then gave Defendant a copy of the search warrant as well as an inventory of the items seized during the search. *See id.* at 10–11, 14–15. Additionally, after Kloostra had removed the handcuffs, Kloostra advised Defendant that Kloostra found firearms and suspected narcotics at the residence. *See id.* at 11. At that time, after Kloostra had removed the handcuffs, Kloostra also advised Defendant that an arrest warrant would be issued for Defendant at a later date. *See id.* at 11, 15. Further, at the same time Kloostra advised Defendant that an arrest warrant would be issued at a later date, Kloostra told Defendant that, as long as McGraw, Defendant's probation officer, did not have additional matters with Defendant that day, Defendant could leave, i.e., he was

free to go. *See id.* at 11, 15–16. In other words, Kloostra told Defendant that Kloostra had no reason to keep Defendant at the probation office and that Defendant should just check with Defendant's probation officer before leaving. *See id.* at 16. At that point, Kloostra did not know whether McGraw had additional matters to discuss with Defendant that day. *See id.*

Then, after Kloostra had removed the handcuffs, after Kloostra returned the keys, after Kloostra advised Defendant that an arrest warrant would be issued for Defendant at a later date, and after Kloostra told Defendant that, as long as Defendant's probation officer did not have additional matters with Defendant that day, Defendant was free to leave, Kloostra asked Defendant how long Defendant had lived at the residence in question. *See id.* at 11, 14–16. Defendant responded that he had lived at the residence for eleven years and that he was the only one living there. *See id.* at 11. In addition, Defendant stated that he had a young son who occasionally stayed with Defendant at the residence. *See id.* At the time of Kloostra's questioning, only Kloostra and Defendant were present in Ford's office. *See id.* at 14. It is unknown whether the door to Ford's office was open or closed at the time of Kloostra's questioning. *See id.* at 15. Additionally, at the time of Kloostra's questioning, Kloostra did not tell Defendant that Defendant did not have to answer, and Kloostra did not tell Defendant that Defendant had to answer. *See id.*

After Defendant responded to Kloostra's aforementioned questioning, Defendant left the Genesee County Probation Office with Maurice. *See id.* at 11–12. Kloostra did not continue to question Defendant because Defendant elected to leave. *See id.* Defendant told Kloostra that he (Defendant) had to leave or that he wanted to leave; either way, Kloostra did nothing to stop Defendant from terminating the questioning and leaving Kloostra's presence. *See id.*

Separately, the Court notes that, despite Kloostra's cautionary statement to Defendant to check with Defendant's probation officer before leaving the probation office, the evidence presented to the Court suggests that Defendant left without checking with his probation officer. *See id.* Presumably, Defendant knew that his probation officer did not have any additional matters with Defendant that day. After all, Defendant spent some eighty minutes in the Genesee County Probation Office before Kloostra returned from the search on November 26.

■ The facts present the Court with a close question, with some factors weighing in Defendant's favor; however, after considering the totality of the circumstances, the Court concludes that Defendant was not subject to custodial interrogation. *See United States v. Swanson,* 341 F.3d 524, 529 (6th Cir.2003).

One factor in Defendant's favor is the purpose of the questioning. *See United States v. Martin,* 95 Fed.Appx. 169, 177, 2004 WL 835559 (6th Cir.2004); *Swanson,* 341 F.3d at 529; *United States v. Crossley,* 224 F.3d 847, 861 (6th Cir.2000); *United States v. Salvo,* 133 F.3d 943, 950 (6th Cir.1998). Kloostra was eliciting information helpful to the prosecution of Defendant on federal firearms and narcotics charges; as a consequence, the purpose of the questioning was hostile (i.e., adverse to Defendant's interests), thereby suggesting that an aspect of a custodial interrogation was present during Kloostra's questioning.

Another factor in Defendant's favor is the place of questioning. The place of questioning was not in a public area or at Defendant's residence; rather, it was in a state probation office. *See Martin,* 95

Fed.Appx. at 177; *Swanson,* 341 F.3d at 529; *Crossley,* 224 F.3d at 861–62; *Salvo,* 133 F.3d at 950–51. As a result, the place of questioning was hostile and coercive because Defendant was "in a confined space in which he might have felt constrained or intimidated." *Salvo,* 133 F.3d at 951; *see also Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529; *Crossley,* 224 F.3d at 861–62. Nevertheless, this is not the only factor under consideration; "custody is not established simply because the questioning 'took place in a coercive environment,' such as a police station" or, in this case, a probation office." *Singleton,* 74 Fed.Appx. at 541 (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)).

The length of the questioning is a factor that weighs against Defendant's position. *See Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529; *Crossley,* 224 F.3d at 861; *Salvo,* 133 F.3d at 950. In this case, Kloostra's questioning was exceedingly brief, lasting only, at most, a few minutes. *See* Tr. at 11–12. The extreme brevity of the questioning is highly indicative of a noncustodial interrogation. *See Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 530; *Crossley,* 224 F.3d at 862.

Further, although Kloostra did not inform Defendant that the questioning was voluntary, there are two additional indicia of a noncustodial interrogation in this case. *See Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529; *Crossley,* 224 F.3d at 861; *Salvo,* 133 F.3d at 950. First, Defendant was not handcuffed or otherwise physically restrained at the time of Kloostra's questioning, *see Tr.* at 11, 14–15; accordingly, Defendant "possessed unrestrained freedom of movement during questioning." *Salvo,* 133 F.3d at 950; *see also Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529–30; *Crossley,* 224 F.3d at 861–62; *Salvo,* 133 F.3d at 951.

Second, after Kloostra removed the handcuffs and before Kloostra questioned Defendant, Kloostra gave Defendant the keys to Defendant's residence, Kloostra informed Defendant that an arrest warrant would be issued for Defendant at a later date, and Kloostra told Defendant that, as long as Defendant's probation officer did not have additional matters with Defendant that day, Defendant was free to leave; these actions indicate that Defendant was not under arrest, that Defendant could return to his residence, and that, as far as Kloostra, Defendant's interrogator, was concerned, Defendant was free to leave at that point in time. *See Tr.* at 11, 14–16; *Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529–30 ("a statement by a law enforcement officer to a suspect that he is not under arrest is an important part of the analysis of whether the suspect was 'in custody.'"); *Crossley,* 224 F.3d at 861–62; *Salvo,* 133 F.3d at 951.

Finally, the Court concludes that a reasonable person in Defendant's position would have felt at liberty to terminate the interrogation and to leave. *See Thompson,* 516 U.S. at 112, 116 S.Ct. 457; *Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529–30; *Crossley,* 224 F.3d at 861–62; *Salvo,* 133 F.3d at 950–51. Although Kloostra neglected to explicitly state that Defendant was not under arrest, the Court concludes that a reasonable person would have understood that he was not under arrest when the questioning took place because of the following four facts that occurred before Kloostra questioned Defendant: Kloostra removed the handcuffs, Kloostra returned Defendant's keys to Defendant, Kloostra stated that an arrest warrant would be issued on a later date, and Kloostra told Defendant that, as long as Defendant's probation officer did not have additional matters with Defendant that day, Defendant was free to leave. This conclusion is especially true in Defen-

dant's situation because, as indicated above, he had prior experience with the criminal justice system (three prior felony convictions) and thus he had prior experience with being under arrest. Furthermore, the fact that Kloostra told Defendant to check with Defendant's probation officer before leaving the probation office does not alter the Court's conclusion because, under the circumstances, having to check with a state probation officer before leaving a state probation office would not cause a reasonable person to feel that he was unable to terminate and leave a federal law enforcement officer's interrogation. *See Thompson,* 516 U.S. at 112, 116 S.Ct. 457; *Martin,* 95 Fed.Appx. at 177; *Swanson,* 341 F.3d at 529–30; *Crossley,* 224 F.3d at 861–62; *Salvo,* 133 F.3d at 950–51. Moreover, merely having to check with a probation officer before leaving a probation office does not rise to the level of restraint associated with a formal arrest. *See Thompson,* 516 U.S. at 112, 116 S.Ct. 457. Lastly, the noncustodial nature of questioning is made abundantly clear by the fact that Defendant, at his own initiative, terminated the interrogation: to reiterate, after Defendant told Kloostra how long he lived at his present residence and that he lived there alone, Defendant left the Genesee County Probation Office; Kloostra did not continue to question Defendant because Defendant freely elected to leave Kloostra's presence; in fact, Defendant told Kloostra that he had to leave or that he wanted to leave, and Kloostra did nothing to stop Defendant from terminating the interrogation and from leaving Kloostra's presence. *See Tr.* at 11–12; *Salvo,* 133 F.3d at 951.

Therefore, after considering the totality of the circumstances, the Court concludes that Defendant was not in custody at the time of Kloostra's questioning, and that, as a result, the absence of *Miranda* warnings in this situation did not violate Defendant's Fifth Amendment right against self-incrimination.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress statements [docket entry 12] is **DENIED.**

**SO ORDERED.**