**UNITED STATES of America**

v.

**Paul Anthony GOJAH, a/k/a Paul Anthony Goga Paul Anthony Gojah, Appellant.**

**No. 13–1433.**

United States Court of Appeals, Third Circuit.

Jan. 9, 2014.

---

Omodare B. Jupiter, Esq., (Argued), Office of Federal Public Defender, Christiansted, VI, Gabriel J. Villegas, Esq., Office of Federal Public Defender, St. Thomas, VI, for Appellant.

Ishmael A. Meyers, Jr., Esq., (Argued), Office of United States Attorney, St. Thomas, VI, for Appellee.

BEFORE: FISHER, COWEN AND NYGAARD, Circuit Judges.

OPINION

COWEN, Circuit Judge.

The defendant-appellant, Paul Anthony Gojah, moved to suppress statements made during a February 27, 2012 interview with a U.S. Immigration and Customs Enforcement ("ICE") agent, arguing that ICE failed to inform him of his *Miranda* rights. In pertinent part, the District Court of the Virgin Islands denied the motion. Because we conclude that Gojah was not "in custody" during the February 27, 2012 interview and, resultantly, that ICE was not bound to Mirandize Gojah, we will affirm.

I.

On February 23, 2012, the Superior Court of the Virgin Islands sentenced Gojah to five days' imprisonment and remanded him to the custody of the Bureau of Corrections ("BOC") in St. Thomas. Gojah provided the BOC with certain biographical information, including his name, date of birth, and country of origin (i.e., Jamaica).

On February 27, 2012, during a routine visit to the BOC and review of its prisoner intake information, ICE agent Salina Fahie noted that Gojah was born in Jamaica. She thus requested an opportunity to speak with him, to determine, *inter alia,* his immigration status.[1]

---

1. Fahie testified that she routinely interviews prisoners as part of the ICE Criminal Alien Program. Through that program, ICE identifies aliens who are incarcerated in federal, state, and local prisons and jails, and, where appropriate, initiates proceedings to remove them. *See Criminal Alien Program,* U.S. DE-PARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT, www.ice.gov/criminal-alien-program (last visited Jan. 7, 2014); *see also United States v. Zamudio,* 718 F.3d 989, 990–91 (7th Cir.2013); *Liranzo v. United States,* 690 F.3d 78, 82 n. 4 (2d Cir.2012); *United States v. Ciprian,* No. 2007–38, 2007

Sometime thereafter, but still on February 27, 2012, a BOC officer opened Gojah's cell door and told him that he had a visitor. Gojah was directed to a small room within the facility, and he walked there freely— i.e., without physical restraints or an escort. Once there, he met Fahie, who introduced herself as an ICE agent and showed him her badge. She was unarmed. Gojah sat down, and Fahie stood in the doorway.

Fahie did not Mirandize Gojah, but explained that he could choose not to answer her questions.[2] During the interrogation that followed, he nonetheless answered questions concerning both his nationality and immigration status. During the interrogation, which lasted approximately ten minutes, the door to the room remained open. At its conclusion, Gojah returned to his cell, again moving throughout the facility without physical restraints or an escort.

Through subsequent investigation, Fahie learned and/or confirmed that Gojah was in the country illegally and had been deported once before.[3] Accordingly, ICE referred Gojah for prosecution for illegal reentry, a violation of 8 U.S.C. § 1326(a). Before trial, Gojah moved to suppress the statements made to Fahie on February 27, 2012,[4] and an evidentiary hearing was conducted. Following that hearing, the District Court denied Gojah's motion. It found, in pertinent part, that Fahie had informed Gojah that he could "answer her

questions if he would, if he can, or would like to," which suggested "that there wasn't an obligation on his part to answer the questions." (App. 133.)

Gojah entered a conditional guilty plea and was sentenced to fifteen months' imprisonment, followed by three years' probation. This appeal followed.

## II.

The District Court had jurisdiction over the underlying criminal proceedings pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and consider *de novo* whether Gojah was "in custody" when questioned by Fahie. *See United States v. Jacobs,* 431 F.3d 99, 104 (3d Cir.2005).[5]

## III.

Law enforcement officials "are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Instead, such officials must administer *Miranda* warnings when a suspect is subject to "the inherently compelling pressures of custodial interrogation." *Howes v. Fields,* —— U.S. ——, 132 S.Ct. 1181, 1188, 182 L.Ed.2d 17 (2012) (citation and internal quotation marks omitted).

---

WL 3125086, at * 1 & n. 1 (D.V.I. Oct. 11, 2007).

**2.** During an evidentiary hearing held upon Gojah's motion to suppress, Fahie testified that she informed Gojah that "[i]f you don't want to answer, you don't want to answer" and "if you don't want to answer, that's fine." (App. 55.).

**3.** That investigation included, *inter alia,* a second interrogation that was conducted on February 28, 2012.

**4.** Gojah also moved to suppress the statements made and evidence gathered during the February 28, 2012 interrogation. However, the fruits of that interrogation lie beyond the purview of this appeal.

**5.** Because Gojah has not challenged the District Court's findings of fact, we will not review those findings.

"[I]mprisonment alone is not enough to create a custodial situation within the meaning of *Miranda.*" *Id.* at 1190. "When a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation. These include the language that it used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id.* at 1192; *accord Bruce v. United States,* 439 F.Supp.2d 364, 371 (M.D.Pa.2006) (Vanaskie, J.) ("Because restraint on freedom is the status quo of a prisoner, the courts examine the totality of the circumstances surrounding the interrogation to ascertain whether the defendant should be deemed 'in custody' for purposes of *Miranda.*").

We have carefully reviewed the facts attendant to the February 27, 2012 interrogation and now conclude that the totality of those facts did not amount to custody for purposes of *Miranda.* Three discrete conclusions support our ultimate holding. First, the manner in which Gojah was summoned to the interrogation was not coercive. To the contrary, he was informed that he had a visitor, was permitted to leave his cell, and walked freely to the room where the interrogation took place. Second, the circumstances immediately attendant to the interrogation were not coercive. Although Gojah and Fahie met in a small room, the door to that room was open at all times, the interrogation lasted only ten minutes or so, and it was conducted by a companionless, unarmed agent. Finally, and most importantly, Gojah was explicitly informed that he could choose not to answer Fahie's questions.

### IV.

Because we conclude that the District Court appropriately denied the motion to suppress, insofar as it concerned the February 27, 2012 interview, we will affirm the judgment of the District Court entered on February 1, 2013.